# PREROGATIVE COURT.

## MAY TERM, 1874.

In the matter of the probate of the will of ENGELINA S. WHITE, deceased.

1. The tearing out of the seal affixed to a will, and of part of the testator's signature, and the obliteration of the rest of his name and of the names of the witnesses, are a cancellation of the will.

2. From the finding of a will in testator's box thus cancelled, the presumption arises that the cancellation was his act, done *animo cancellandi* and that by that act, he intended to render the will null and void.

3. A general allusion in a letter found in the same box, to testator's will, and a conversation with the executor therein named, shortly before testator's death, in reference to a request made by the will and which was then known by the executor, are too loose and uncertain to establish a will contrary to the cancellation by the testator himself.

*Mr. I. W. Lanning,* for proponent.

THE ORDINARY.

On the 28th of January, 1874, Engelina S. White, widow, died in the city of Trenton. At the time of her death, she was the owner of real and personal property. Immediately after her decease, there was found in a repository, (a tin box,) which she had kept in her room for many years and which she called her "bank," among her deeds and other writings, a paper which she had executed on the 30th of December, 1867, as her last will and testament. With it was found a letter written by her to her cousin, on the 4th of July, 1871, endorsed with a direction "to be opened one hour after my death," by which she requested the lady to whom it was addressed, to take exclusive possession, on the day or night of the writer's death, of all her personal property, her wardrobe household furniture, papers, silver and jewels, and all belong-

ing to her in the house, until her will should be read, adding "then the rightful (owner) may come forward with a just claim upon the property, but not until then," and ended the letter with an expression of her continued confidence in her cousin. By that will she gave all her property, real and personal, to her uncle, Edmund Bartlett and his wife, and requested that her remains be buried in the same lot or burial plot with her deceased children, in St. Louis, Missouri. She appointed Mr. Bartlett her executor. He now offers that paper for probate as her last will and testament. The execution of it is fully proved. It purports to have been, and actually was executed under her hand and seal, and the certificate of attestation declares it to have been signed, sealed, published and declared by her, as her last will and testament. When found, after her death, it was not enclosed in an envelope, but was lying folded up in a pocket-book in the box. The seal had been carefully torn off; the paper where the seal had been affixed, being torn entirely out with that on which the greater part of her surname as signed to the will was written, and the rest of her signature was obliterated with very heavy pencil marks. The signatures of the three witnesses were obliterated in like manner. The will is written on the two sides of a half sheet of paper, and was signed but once. The testatrix died about six years after the execution of that instrument, and about three years and a half after the date of the letter above mentioned. It does not appear that she made any reference to her will after writing the letter, except in a conversation with Mr. Bartlett shortly before her death, in which, referring to the fact, that, as he knew, she had in her will requested that she might be buried at St. Louis, she said she had changed her mind on the subject, and wished to be buried where her husband was buried, in Burlington county, in this state.

The will bears clear evidence of the intention to revoke it. The tearing out of the seal and of part of the signature of the testatrix, and the obliteration of the names signed to the will, are a cancellation of the will. *Avery* v. *Pixley*, 4 *Mass.* 460;

*Hobbs* v. *Knight*, 1 *Curteis* 768 ; *Goods of James*, 7 *Jur.*, *N. S.*, 52 ; *Price* v. *Powell*, 3 *H. & N.* 341 ; *Smock* v. *Smock*, 3 *Stockt.* 156. And from the fact that the will was found in the possession of the testatrix, in her repository, thus cancelled, the presumption arises that the cancellation was her act, done *animo cancellandi,* and that by that act, she intended to render the will null and void. *Smock* v. *Smock, supra ;* 4 *Kent's Comm.* 532 ; *Davies* v. *Davies,* 1 *Lee* 444 ; *Lambell* v. *Lambell,* 3 *Hagg.* 568 ; *Baptist Church* v. *Robbarts,* 2 *Barr* 110.

Nor can the will be established by the evidence of the letter and conversation above stated. There is no proof as to when the cancellation took place. It may have been after the letter was written ; and besides, the reference to a will in that letter does not necessarily point to this instrument. The allusion to the request contained in the will as to the place of her burial, is not sufficient to revive the will. " It would be very dangerous," said Sir George Lee, in Davies *v.* Davies, " to establish wills on loose general declarations, contrary to apparent acts done by testators themselves."

Probate of this will must be denied.