Randall *v.* Beatty.

ELIZABETH RANDALL, appellant,

*v.*

JOHN BEATTY and WESLEY BEATTY, respondents.

1. Where one will is revoked by another, the revocation is testamentary, and the revocation of the latter will revives the former.

2. A testatrix executed several wills, all of which she destroyed, except one executed in 1870.   By a will made in 1873, she expressly revoked all former wills, and delivered to a legatee therein a paper which she represented to be the will of 1870, with directions to destroy it, and that paper was destroyed.   She afterwards cancelled the will of 1873.   After her death, the will of 1870 was found, carefully preserved among her effects.—*Held*, that the cancellation of the will of 1873 revived that of 1870, and that the testatrix's imposition upon her legatee as to destroying the will of 1870 did not affect it, nor would evidence of her verbal declarations of revocation.

On appeal from decree of Somerset orphans court, admitting to probate a paper purporting to be the will of Ann Rider.

NOTE.—Most of the cases relative to the effect upon a prior will of the destruction of a subsequent one which revoked the prior one, may be found in *1 Wms. on Ex'rs 178; 2 Am. Lead. Cas. 518;* see, also, *Colvin*

Randall *v.* Beatty.

*Mr. J. Kearney Rice* and *Mr. J. D. Bartine,* for appellant.

*Mr. H. M. Gaston,* for respondents.

THE ORDINARY.

The question presented in the arguments of counsel is, whether the revocation of a posterior will, which contains an express revocation of all former wills, is, of itself, a revival of the former will. The proof in the cause shows that the testatrix, in 1870, executed, with due formalities, the will propounded for probate. By it, she gave all her household goods and wearing apparel to her sister Mary Ann Beatty, and all the residue of her property to her nephews John and Wesley Beatty, sons of Mary Ann Beatty, with provision that if they, or either of them, should die, leaving no children, the property should go to their sisters and their children. In 1873, she executed another will, wholly inconsistent with that of 1870, giving all her property to her niece Jane Ruckman, and expressly revoking all former wills. It is admitted that the will of 1873 was cancelled by her.

Jane Ruckman and her husband both testify that, when the testatrix executed that will, she delivered to the former

---

v. *Warford, 20 Md. 358; Rudisill* v. *Rodes, 29 Gratt. 147; Harwell* v. *Liveley, 30 Ga. 315; Dickinson* v. *Swatman, 6 Jur. (N. S.) 831; Newton* v. *Newton, 12 Ir. Ch. 118.*

Will a former will be revived by the fact that a subsequent one, revoking it, cannot be found after testator's death. *Helyar* v. *Helyar, 1 Lee 472; Brown* v. *Brown, 8 E. & B. 876; Legare* v. *Ash, 1 Bay 464; Jones* v. *Murphy, 8 Watts & Serg. 275; Nelson* v. *McGiffert, 3 Barb. Ch. 158; Dawson* v. *Smith, 2 Houst. 92; Wallis* v. *Wallis, 114 Mass. 510;* see *Day* v. *Day, 2 Gr. Ch. 549.*

Will a wife's surviving her husband revive a will revoked by her marriage. *Hodsden* v. *Lloyd, 2 Bro. C. C. 534; Doe* v. *Staple, 2 T. R. 684; Long* v. *Aldred, 3 Addams 48; Brett* v. *Rigden, Plowd. 343; Walker* v. *Hall, 34 Pa. St. 483; Garrett* v *Dabney, 27 Miss. 335; Morton* v. *Onion, 45 Vt. 145; Tuller's Case, 79 Ill. 99.*

Will the death of a child unprovided for by the will, before the testator, revive a will revoked by its birth. *Emerson* v. *Boville, 1 Pihllim. 342; Barrow* v. *Baxter, 2 Phillim. 261 note; Ash* v. *Ash, 9 Ohio St. 383;* see *4 Kent *526; Morse* v. *Morse, 42 Ind. 365.*—REP.

Randall *v.* Beatty.

a paper, which she said was the Beatty will, and directed her to destroy it, to burn it. According to Mrs. Ruckman's testimony, the paper answered the description of the Beatty will, and appeared to have been cancelled. It was not that will, however. The rule on the subject of the revival of a prior will by the revocation of a later one containing words of revocation, was, up to 1838 (when, by the enactment of a statute (*1 Vict. Ch. 26*), the question was put at rest), different in the courts of common law and the ecclesiastical courts in England, the former holding that the revocation of the later will, of itself, worked a revival (*Jarm. on Wills 122, 123*), while the latter held that, whether there was a revival or not, was a question of intention. *Usticke* v. *Bawden, 2 Addams 116*.

The will of 1870 was never cancelled. If the testatrix gave to Mrs. Ruckman a paper which she declared was that instrument, the only reasonable construction of the act is, that she thus intended to delude the Ruckmans, with whom she then proposed to live in their family, as to her design, and to induce them to believe that she had, in addition to making a will in favor of Mrs. Ruckman, cancelled the Beatty will. The will of 1870 was, at her death, found among her effects, in an envelope, with a copy of her deceased husband's will. It was entirely in her own handwriting. The law declares the manner in which a will is to be revoked. It must be by burning, cancelling, tearing or obliterating it by the testator, or in his presence and by his direction and consent, or by a writing executed with the same formalities as a will. No proof of declarations of revocation, made by the testator, will avail. *Boylan* ads. *Meeker, 4 Dutch. 274, 285*. The will of 1870 is produced uncancelled. It is admitted that there is no revocatory will or writing extant, but it is alleged that all such instruments subsequently made by the testatrix, have been cancelled. The execution of the will of 1873 was not attended or followed by the cancellation of the will of 1870. Notwithstanding the revocatory clause in the will of 1873, the will

of 1870 was retained by the testatrix uncancelled, up to the day of her death. The fact that she so kept the will is the most cogent evidence of her intention that it should be revived by the cancellation of the will of 1873.

In *Usticke* v. *Bawden*, *ubi supra*, the court said that the fact that a testator kept the prior will in her possession after the making of the later one, which expressly revoked the former, would raise a strong presumption that he meant that it should revive on the cancellation of the revocatory will. In this case, this presumption could not be overcome by the hearsay testimony (for it is incompetent for the purpose) of witnesses as to the statements of the testatrix, before referred to. They say she said that she had destroyed the will of 1870; that she had destroyed all her wills; but the will of 1870 itself furnishes demonstration that she had not done so. It is in evidence that she made numerous wills, one in favor of her sister, Mrs. Neil, before 1870; a will executed in the presence of Elizabeth Thomas and her sister, about 1868 or 1869; the Beatty will, in 1870; the Ruckman will, in 1873, and a will executed in the presence of Mr. and Mrs. Mack, in 1875. It also appears that, though for the last three or four years of her life she was not favorably disposed to any of her sisters, she was as much so towards Mrs. Beatty as any of them, and that she always spoke well of the sons of the latter, John and Wesley. Whether the cause be judged by the rule of the English common law courts, or that of the ecclesiastical tribunals, as those rules were prior to the statute of 1838, the will of 1870 is entitled to be admitted to probate. The true rule on the subject is, that where one will is revoked by another, the revocation is testamentary, and the revocation of the latter will revives the former.

The decree of the orphans court will be affirmed.