ELEANOR HOLCOMBE et al., appellants,

*v.*

LEVI HOLCOMBE et al., respondents.

On appeal from a decree advised by Vice-Chancellor Van Fleet, whose opinion is as follows:

The evidence, viewed as a whole, leaves no doubt on my mind, that the testator, up to the time he was stricken with paralysis, was competent either to make or revoke a will. If he destroyed his will prior to July 12th, 1882, there can be no doubt that its destruction amounted in law to an effectual revocation. There is no direct proof of revocation. If the will was revoked at all, it was revoked by destroying it. No one saw it destroyed; at least, there is no proof of that kind in the case. The evidence of two witnesses puts the will into the possession of the testator about the middle of June, 1882, and there all further trace of it is lost. One of these witnesses swears that at the time the testator took possession of the will he said he intended to destroy it, and the same witness swears that the testator subsequently stated to him that he (the testator) had told a third person that

he had destroyed the will, but that third person testifies that the testator never told him so. If the evidence of these two witnesses is believed, the fact of revocation is fully proved, for the courts of both the United States and England hold, as a well-established principle, that where a will is traced to the possession of the person who made it, and after his death it is found among his papers mutilated in such a manner as to indicate that he intended to revoke it, or it is not found at all, the law presumes that the testator mutilated or destroyed the will *animo revocandi*. *1 Redf. on Wills 307* ¶ *8; 330* ¶ *48.*

The decision of the case turns upon the question whether the evidence of these two witnesses is believed or not. They are the only persons now living who saw the will pass into the possession of the testator, and heard what he said concerning it. For this reason it is not possible to contradict their evidence, in its most vital point, by evidence drawn from other sources than themselves. The court should, therefore, deal with their evidence with the utmost caution, and scan it very closely. I have tried to do so, and after very full and careful consideration, I am obliged to say that I find nothing in their evidence nor in the other evidence in the case, which leads me to doubt the substantial truth of their story. While they are deeply interested in the result of this contest, and subject to the bias naturally incident to their position as parties litigant, they seem, in testifying, to have been frank and candid, and I have failed to find anything, either in their evidence or their conduct, which would justify a belief that they have deliberately stated anything that they knew to be untrue. There is nothing in their evidence so unnatural or improbable as to shock my credulity. The events they describe are just such as might naturally happen under the circumstances. Their conduct in connection with the will, as they describe it, may not appear now to have been as cautious or as circumspect as that of a person of unusual foresight might have been ; but we are bound to remember that we are looking at their conduct in the light of subsequent events, but when they acted they could not foresee what would occur in the future. I think their evidence is entitled to credit. It is in one particular,

38

Knowles v. Downie.

at least, strongly corroborated. Its effect on my mind has been, notwithstanding the most rigorous tests I was able to apply, to convince me that the will passed into the testator's possession while he possessed sufficient capacity to revoke it. The establishment of this fact entitles the defendants, under the rule of law above stated, to a dismissal.

But I do not think they are entitled to costs. The two who knew all about the circumstances under which the will got into the possession of the testator, were not frank and open in disclosing to the complainants what they knew. Their utterances were certainly vague and somewhat mysterious—sufficiently so to justify suspicion. It is this part of their conduct which has created the strongest doubts in my mind as to the degree of credit which their evidence should receive. Their conduct naturally provoked suspicion and invited investigation, and, I think, therefore, that the complainants' bill should be dismissed without costs, each party paying their own.

*Messrs. J. G. Shipman & Son,* for appellants.

*Mr. R. S. Kuhl,* for respondents.

PER CURIAM.

Decree unanimously affirmed for the reasons given by the vice-chancellor.