In the matter of the probate of the will of HOWARD P. FROTH-INGHAM, deceased.

[Submitted June 24th, 1909. Decided November 15th, 1909.]

Lead pencil marks drawn by a testator through certain clauses of his will, with the intent *at the time* to revoke such clauses, will have that effect given to them notwithstanding the subsequent employment of the instrument so canceled as the text from which a fair copy was to be made.

On appeal from a decree of the prerogative court advised by the vice-ordinary, whose opinion is reported in *75 N. J. Eq. (5 Buch.) 205.*

The orphans court of Monmouth county, in admitting to probate the will of Howard P. Frothingham, deceased, filed the following conclusions:

The writing, which it is the object of these proceedings to have admitted to probate as the last will and testament of Howard P. Frothingham, was executed by him as his will in due form of law on the 10th day of October, 1906. This is proved by the testimony of the subscribing witnesses to the instrument.

After the death of the testator on February 2d, 1907, the paper in question was found in his safe, in his New York office, with pencil marks through five of the eleven items it contained; and the proponent, his widow, now asks to have the will probated with the canceled parts omitted.

It appears by the proofs that testator, at the time of the execution of the instrument in October, 1906, was engaged in business as a money broker in the city of New York; in the latter part of December, 1906, about two months prior to his death, he had a conversation with Mr. James P. Dodd, his confidential employe, and they talked over his financial conditions; he had lost most of his personal property since the execution of the will in October; he said that he had almost no estate left, outside of what real estate he had, and that he thought he ought

to change his will, because he had provided in the will for annuities, and there was no money out of which to pay annuities, and that he was worried about what would become of Mrs. Frothingham. He wanted her to have all she could get out of his estate, which he thought would be very little, and he told Mr. Dodd to call his attention to the matter the next day, so he could get the will out of the safe and make the changes. The next day he asked Mr. Dodd for the will, and then he made the pencil marks now appearing upon it (including the word "sold" written in pencil across the· second paragraph of the fifth item), with the exception of the pencil marks through the names James P.. Dodd, John Olney and John J. Edwards, in the second paragraph of the third item of the will; these marks were made by Mr. Dodd at the same time at the suggestion and in the presence of the testator.

After making these pencil marks upon the will, Mr. Dodd asked him if he wanted it sent to his lawyer; testator said, "No, send it to the man who engrossed the will and have him make a draft of it, according to the corrections." The draft was made, but one clause in it did not suit the testator, "and he threw it aside and put the old will in the safe." He put the draft of the new will in his desk. This new draft was found in his desk, after his death, unexecuted, and with a pencil line drawn through the first page of it.

From an inspection of the will, it appears that the second item, across which testator made pencil marks, provided for the payment of annuities amounting to $6,000 yearly, and made the same a charge upon his residuary estate, which he devised to his wife.

By the third item, through which he had drawn pencil lines, he gave his business to his friend, James P. Dodd, and by the fourth and fifth items, through which he had also drawn pencil marks, and across the second paragraph of the fifth item had written the word "sold," he devised certain real estate in East Orange, New York City, and in Passaic and Bergen counties in this state.

Although not in proof, it was stated by counsel at the hearing that all the real estate devised by these items had been sold

by the testator prior to making the pencil marks in December. With the items thus marked in pencil eliminated, the will simply provides for the payment of testator's debts, names his wife his executrix, and bequeaths and devises to her all his real estate and personal property.

It was conceded on the argument, that under *Gen. Stat. p. 3757 § 2,* and on the authority of *In re Kirkpatrick's Will, 22 N. J. Eq. (7 C. E. Gr.) 463,* and the recent case of *Hilyard* v. *Wood et al., 71 N. J. Eq. (1 Buch.) 214,* a will, or any devise or bequest in it, can be revoked by canceling the same by the testator himself, or in his presence, and by his direction or consent, and that the canceling can be done with a lead pencil as effectively as if done in ink, providing the canceling was done with intent to revoke the clause canceled.

The only question for determination in this matter is that of the testator's intention in making the pencil marks upon the will.

It is contended, on the part of the proponent, that testator thereby intended to revoke the clauses of the will in question, by canceling the same with the pencil marks, and that this was his intent at the time of making the marks, and that only that portion of the will should be admitted to probate the clauses of which have not been canceled by such marks.

The caveators claim that testator's act in making these pencil marks was not final, but that the marks were only placed upon the will as directions or instructions for the draftsman, in preparing a new will, which should eliminate the clauses marked, and which testator intended to execute, in order to give effect to the changes which he desired to make in the disposition of his estate, and they invoked the application of the rule of dependent relative revocation on the facts established.

Under the proof I do not think this rule applies. There is nothing in the testator's declarations showing that the cancellation of the clauses in question was conditional, and not final. He realized that he had sustained great losses since the execution of his will, and because of them he desired to change his will. He had provided for annuities, and realized that his estate could not produce the money to pay them. He was natu-

rally worried about what would become of his wife, in the event of his death, in his then present financial condition, and, as he expressed it the day before the cancellation of the clauses,

"he wanted her to have all she could get out of the estate, which he thought would be very little, and he wanted his attention called to the matter the next day, so he could get the will out of the safe and make the changes."

The next day, without being reminded of the matter, he called for the will and made the changes he desired, by canceling the clauses in question, and, in effect, leaving everything to his wife. He made no statement about executing a new will, or that would show any intention on his part to have these changes in his will become effective, only on the happening of some other event such as the execution of another will, and did direct the will, after the cancellation of these clauses, to be taken to the draftsman to have a draft made of it, omitting the canceled items; but there is nothing in the proofs but this act to indicate, in any way, an intention on the part of the testator to execute a new will, or to postpone giving effect to the changes made in his will until a new will could be prepared and executed.

He apparently had no doubt that the will in its canceled form was effective; he did not consider the advice of counsel on it necessary. When the new draft of will was presented to him he was not satisfied with it. He did not execute it, but placed it in his desk, and put his will with the canceled clauses in his safe, and kept it there without change until he died. He treated the cancellation of the clauses in question as a completed and final act, and clearly regarded it as in proper form to give effect to his express desires concerning the welfare of his wife. I can find nothing in the proof showing the act of cancellation to be dependent on any other act of the testator, or that it was related in any way to an intent on his part to make the same effective only when some more formal method of revocation had been adopted by him.

In the light of his declarations before the cancellations, and of his avowed purpose and reasons for making them, coupled

with his treatment of the new draft of the will, when it was received, and for nearly two months thereafter, I am satisfied that at the time testator made the lead pencil marks through the clauses of his will, he made them with the intent at that time of revoking such clauses by cancellation, and that his act in then making the cancellations was final, and not deliberative or conditional on any other intention or act on his part.

My conclusion is that the cancellations were made *animo revocandi,* and the will will be admitted to probate with the canceled parts omitted.

The decree of the orphans court upon appeal to the prerogative court was reversed for reasons that appear in the opinion of the vice-ordinary. The present appeal is from this decree of the prerogative court.

*Mr. Edmund Wilson,* for the appellants.

*Messrs. McDermott & Fisk,* for the respondents.

PER CURIAM.

We have reached the conclusion that the decree of the orphans court was right, and should be affirmed for the reasons stated in the opinion filed by Judge Foster in that court, and that to this end the decree of the prerogative court should be reversed.

Our examination of the testimony convinces us of the correctness of the conclusions reached by the orphans court, viz., that *at the time* the testator made the erasures his sole object was to get rid of the clauses that he so canceled, and that the having of a fair copy made by a penman, and whatever grew out of it, were after thoughts to which controlling significance did not attach. What we wish to emphasize is that in revocations of this nature, there is but one point of time as to which the intent of the testator is to have controlling effect, and that is the time of the doing of the very act that constitutes such revocation. To extend the scope of such inquiry to subsequent periods, however closely related in point of time with the revocatory

act, is but to add a new danger to a rule that is already from its inherent nature too much exposed to fraud.

The decree of the prerogative court is reversed, and the decree of the Monmouth county orphans court affirmed.

*For affirmance*—THE CHIEF-JUSTICE, REED, TRENCHARD, VOORHEES, MINTURN, VROOM—6.

*For reversal*—GARRISON, PARKER, BERGEN, VREDENBURGH, GRAY, DILL, CONGDON—7.