This is an appeal from the decree of the orphans court of Burlington county denying probate to the paper writing propounded as the last will and testament of Hannah S. Cook, deceased. The issue is as to whether or not there has been proven compliance with the statutory requisites for the valid execution of a will.
As to some of those requisites — see Wills' act, section 24, *Page 226 
and Bioren v. Nesler, 77 N.J. Eq. 560; 78 Atl. Rep. 201 — there is no question. The will is in writing; it is signed by the testatrix; and after such signature it was subscribed by two witnesses in the presence of the testatrix. It is also requisite under the statute that, before the signing by the witnesses, the signature of the testatrix must have been made or acknowledged by her and a publication or declaration of the instrument by her as her will — both of these things being required to be done in the presence of the two witneses, both present at the same time. There can be no doubt whatever, in the mind of anyone reading the testimony, but that the testatrix intended this instrument as her last will and testament and that she and the witnesses intended and endeavored to have it duly executed as such. Nevertheless, if any one of those things which the statute says must be done, in order to execute a valid will, was not done, or has not been proved to be done, the court cannot admit it to probate. This case is only another illustration of the risk that is run by one who attempts the making of a will without legal advice — the grave risk that the instrument will not be valid and that the estate will go to persons other than those intended to receive it, and the still greater probability that even if the will is held valid, a considerable part of the estate will be dissipated in litigation.
The record shows that the entire will (except the signatures of the witnesses) is in the handwriting of the testatrix herself; that on the occasion of the execution she was seventy-three years old, ill and in bed; that the witnesses were her physician, Dr. Marks, and a Mrs. Hagaman, who lived with her and took care of her and the house.
The instrument propounded for probate was a double sheet (four sides) of foolscap, with a smaller piece of paper (about one-half of a single or half sheet of foolscap) pinned to it with a safety pin. On this small sheet was written in Mrs. Cook's handwriting, an additional, contingent gift to one of the beneficiaries named in the "main" will — obviously decided upon and written after the completion of the "main" will. It was found in this condition —i.e., pinned together — *Page 227 
in an envelope in the drawer of Mrs. Cook's bureau or dresser and handed over to one of the executors named therein.
It appears by the testimony of Dr. Marks in the orphans court, that he and Mrs. Hagaman were present in the small bedroom, where Mrs. Cook was propped up in bed; that Mrs. Cook asked Mrs. Hagaman to get "the papers;" that Mrs. Hagaman procured the document from the drawer of the dresser (in the same room) took them to Mrs. Cook's bedside and gave them to Mrs. Cook; Mrs. Cook "unfolded the papers, looked over them, leafed them back, placed them back again and signed in my presence this little paper which she had pinned to the will and which she stated was to be, and was a part of her will and her wishes;" that, as to the large sheet or "main will," which had been already signed by Mrs. Cook at some previous time, "she declared to me that this was her will and her signature which she wished me to witness," folded the papers up and handed it to him folded; that he did not venture to unfold it, but signed it alongside of Mrs. Cook's signature (which was in the middle of the page), that being the only vacant space he saw, also writing the word "witness" above his signature, first telling Mrs. Cook that that was what he was going to do; that after he had signed he stated to Mrs. Hagaman in the presence of Mrs. Cook that "this was Mrs. Cook's will and signature which Katie (Mrs. Hagaman) was asked to witness" and Mrs. Hagaman "wrote her name below mine in the presence of the three of us;" that the paper was returned to the dresser drawer, and that he did not leave the room at any time until after that.
Dr. Marks did not give this as a connected narrative; it is a collated summary of various parts of his testimony on direct and cross-examination. This testimony was not shaken or impaired on cross-examination — in fact much of it was brought out or clarified on cross-examination; it bears every evidence of credibility — he gave negative answers in a number of instances where positive answers would have materially strengthened the evidence; his appearance and manner when testifying later in this court were such as to evidence credibility; *Page 228 
he had no interest (he was given a legacy of a rug and some books worth a little over ten dollars — which, of course, under the Wills' act is void); his credibility is not impeached; there is nothing in contradiction of any of this testimony anywhere in the record, on the contrary, much of it is corroborated by Mrs. Hagaman; there is every reason to accept it as true, and the facts thus set forth should and will be regarded as duly proven.
A consideration of this testimony shows that with one exception, it completely establishes that the requisite formalities were complied with — that the signature to the "main" will was acknowledged by testatrix, the unsigned added portion of the will was signed by her, the whole was declared by her to be her will, and after all that the two witnesses signed. The exception is that there is no express statement by the doctor that Mrs. Hagaman was present during the whole of this proceeding. More important still — for the will has no attestation clause and the burden of proving due execution was on the proponents — he testified that Mrs. Hagaman was "in and out" during the time he was there and that he could not remember whether Mrs. Hagaman was in the room or not at the time Mrs. Cook made the one signature, acknowledged the other and declared the whole as her will.
This is a vital point, because even if the subsequent statement by the doctor to Mrs. Hagaman in Mrs. Cook's presence (that this is Mrs. Cook's will and signature which you are asked to witness), can be deemed to be an acknowledgment and publication by Mrs. Cook, it was done after Dr. Marks had signed; and it is requisite that everything required to be done by the testatrix shall precede the signing by the witnesses. Bioren v.Nesler, supra.
The necessary proof on this point, however, is not wanting. For one thing, in the additional testimony taken in this court, Dr. Marks testified that at the time of the signing, acknowledgment and declaration by Mrs. Cook, Mrs. Hagaman was present, standing beside the bed within two or three feet of Mrs. Cook. He was not cross-examined on this *Page 229 
point; he was not asked, and no explanation appears, as to why he was sure of that fact now, when he could not be sure at the time of his testimony in the orphans court. It is entirely possible — and, I think, under the entire record, must be deemed probable
— that his later testimony is correct, and that he could have given a satisfactory explanation of his earlier doubt and later assurance. It is quite possible that his memory was refreshed, at the very time of the orphans court hearing, by the subsequent testimony of Mrs. Hagaman. (All of the doctor's testimony in the orphans court preceded that of Mrs. Hagaman.)
But even if we accord no weight whatever to the testimony of the doctor in this court on that point, it is nevertheless positively and sufficiently proved by the testimony of Mrs. Hagaman before the orphans court. The doctor's testimony before the orphans court was positive and convincing, as well as being inherently probable, that the signing, acknowledgment and declaration was all done by Mrs. Cook before she handed the papers to him. Mrs. Hagaman's testimony is that Mrs. Cook asked her to get the envelope with the papers in it out of the drawer; that she (Mrs. Hagaman) did so, took the papers to the bed, handed them to Mrs. Cook; that Mrs. Cook and the doctor were talking; that Mrs. Cook handed the papers to the doctor, and that she (Mrs. Hagaman) then left the room. Her testimony is positive and repeated, that she was still present in the room, beside the bed, when Mrs. Cook handed the papers to Dr. Marks. Clearly then she was present during the signing, acknowledgment and declaration. Mrs. Hagaman's testimony is credible and convincing for much the same reasons as apply to Dr. Marks' testimony.
True it is that Mrs. Hagaman did not say just what was done or said by Mrs. Cook after she had received the papers and before she gave them to Dr. Marks; she does not testify to the signing, acknowledgment and declaration. It was perhaps for this reason that the orphans court denied probate (no opinion was filed — at least none appears in the record). But it is not necessary that the performance of the statutory *Page 230 
requisites be proven by the testimony of two witnesses. In reHalton, 111 N.J. Eq. 143 (at pp. 159 et seq. — decided on the date of the decree under appeal).
The proofs therefore satisfactorily establish the signing, acknowledgment and publication by the testatrix in the presence of the two witnesses who were both present at the same time, and who thereafter both subscribed their names as witnesses in the presence of testatrix. All of the statutory requirements are proven.
Respondents contend that the two witnesses did not sign in each others presence, and that for that reason the execution is imperfect and invalid. It is true that neither witness could remember whether Mrs. Hagaman was actually in the room at the instant Dr. Marks wrote his signature (all three were together when Mrs. Hagaman signed). She stepped into the next room after Mrs. Cook asked the doctor to sign and handed him the will. His search for a space in which to sign, and his brief colloquy with Mrs. Cook, and his writing the word "witness" and his own signature followed; he called to Mrs. Hagaman, who immediately stepped back into the room, and as she was coming toward him he asked her to sign as a witness to the will, she saw his signature on it and signed immediately below his signature. It is probable from all the testimony that she was in the room or entering it during the act of his signing; certainly she was not more than a few feet away and was actually cognizant of the fact that he had just signed immediately before she signed. It would appear that she was substantially in his presence when he signed. The room was only ten by twelve, or twelve by fourteen, and he was not more than six feet from the door.
In any event, however, the statute does not require that the two witnesses sign in the presence of each other; the requirements expressed are only that both shall sign and that their subscription shall be in the presence of the testator. This was certainly complied with.
It might reasonably be argued that it is fairly inferable from the provisions of the statute that the legislative purpose *Page 231 
is that there shall be two witnesses who shall be able (if living) to testify that the statutory requirements have been observed. Assuming that such a construction is correct, it is not thereby necessitated that the two witnesses sign in the presence of each other. In the instant case it is quite obvious from the evidence that Mrs. Hagaman was able to testify that the signature of Dr. Marks, as well as that of herself, was made in the presence of the testatrix. Even if she did not actually see Dr. Marks sign and was not actually in his presence when he signed, she knew when he signed and where he and the testatrix were when he signed. (And of course Dr. Marks also was able to testify that both signatures were made in the presence of the testatrix.) The (assumed) implied statutory requirement is therefore met, as well as the express statutory requirement: both witnesses signed in the presence of testatrix and both witnesses were able to testify to that fact even if it be deemed that Dr. Marks' signature was not made technically in the actual presence of Mrs. Hagaman.
The will, including the annexed half-sheet, is entitled to probate. The half-sheet was annexed to the large double sheet at the time of the acknowledgment and publication; was itself separately signed by her at that time and specifically mentioned as a part of the will she was executing. Many, if not most, wills consist of two or more separate sheets fastened together. No particular forms or method of fastening is requisite. It is sufficient if it is satisfactorily established — as it is in the instant case — that the several sheets propounded were collectively executed, published and witnessed as a single instrument or will.
There are certain apparent alterations by way of additions, on the face of the will. It is clear, however, that these were made prior to the execution, and they should be included in the will as probated. The first of these is the name "Jennie Givin," in the first line of the second item of the will. It is evident that this was an inadvertent omission in the writing of the first line, for the name was properly written in, in the following line, and the omission thus noticed, was inserted by *Page 232 
a caret in the first line. The next is "whole fund" written after and in substitution for the word "capital" immediately preceding it, "capital" being canceled. It is obvious that this was done as the will was being written.
Both of these are of no particular importance; they make no difference in the effect of the will. There are, however, several lines added on the last page, giving bequests of $100 each to several persons. These lines are upside down from the rest of the will, and it seems quite apparent that they were added after the testatrix had signed the main will. That they were written in before the legal execution, however, is clear from the fact that Dr. Marks found no place to sign as witness except alongside the signature of testatrix, and from the fact that the last addition made by testatrix prior to the legal execution was on the separate sheet which she annexed and signed at the time of the execution. If the added bequests of $100 had not already been written in, testatrix would have written the short addition in that space instead of on the separate sheet (which would not have been necessary).
The will contains a bequest to Christ Church Home of "five thousand dollars, if not enough money give twenty-five hundred dollars" and a similar bequest to Evergreen's Home. In each instance a line has been drawn with ink, through the words "five thousand dollars." It is concluded from all the testimony and the evidence of the will, that these erasures were made by the testatrix with the intent to cancel and revoke pro tanto and that the will should be probated accordingly. Hilyard v. Wood,71 N.J. Eq. 214; 63 Atl. Rep. 7; Frothingham's Case, 76 N.J. Eq. 331; 74 Atl. Rep. 471. Both of these two legatees concede this in their briefs (and they are of course the only parties adversely affected thereby).
The decree of the orphans court will be reversed with directions to enter decree in accordance with the foregoing conclusions. *Page 233