Flora E. Smalley died July 12th, 1937, aged seventy-nine. Four wills shown to have been executed by her were found among her effects, the first dated February 10th, 1927, the second dated April 28th, 1932, the third dated June 25th, 1937, and the fourth dated June 29th, 1937. The first and fourth wills were intact; from the second will the attestation clause and her signature had been torn and her signature had been torn from the third will. The fourth will was admitted to probate by the Morris County Orphans Court but on appeal the Prerogative Court by decree entered November 30th, 1938, set aside probate on the ground that the will was the product of undue influence exercised on the testatrix, which decree was affirmed by the Court of Errors and Appeals. (In re Smalley, 124 N.J. Eq. 461; affirmed, 126 N.J. Eq. 217.) On or about December 12th, 1939, a petition was *Page 176 
presented to the Morris County surrogate that the third will or, in the alternative, that either the second or first will be admitted to probate as the last will of the testatrix. Caveat was filed against probate of any of said wills and after a hearing before the Morris County Orphans Court an order was entered admitting to probate the (third) will of June 25th, 1937, it being determined by that court that the signature had been torn therefrom by the testatrix or by her direction, under the mistaken belief that she had executed a valid subsequent (fourth) will; that it was her intention to die testate and that her attempted revocation of her third will was conditional and dependent on the validity of her fourth will. This appeal is from that order of the Orphans Court.
It was determined by the Prerogative Court and the Court of Errors and Appeals, after examining the circumstances surrounding the preparation and execution of the fourth will, that that will was invalid because it was the product of undue influence exercised on the testatrix and the will was refused probate as failing to express the testatrix' unrestrained intention or desire. The effect of such determination was to reject the entire will, including the clause therein contained which attempted to revoke all former wills executed by the testatrix. (Randall v.Beatty, 31 N.J. Eq. 643; In re Diament's Estate, 84 N.J. Eq. 135; affirmed, 88 N.J. Eq. 552; In re Block, 15 N.J. Mis. R. 233;Rudy v. Ulrich, 69 Pa. St. 177; Laughton v. Atkins, 1 Pick.535.)
The question now to be considered is: Should removal of the testatrix' signature from her third will be taken as evidencing an absolute and final intent on her part to revoke that will?
The evidence satisfies me that at the time the fourth will was executed, it and the second and third wills were left with the testatrix, the third will being then unmutilated, and that the same day or the following day after the testatrix had examined her wills, she tore her signature from the third will in the belief that her fourth will would be given effect after her death. She probably mutilated her second will at the same time. About two years after testatrix' death, scraps *Page 177 
of paper were found in the pocket of a dressing gown belonging to her, one of which being an attestation clause and bearing her signature, fitted in the torn space of her second will, and another bearing her signature, fitted in the space left by the mutilation of her third will. However, if the proofs as to who tore the signature from her third will can be said to be inconclusive, the fact that the mutilated will was found among the testatrix' effects after her death raises the presumption, which has not been rebutted, that the signature was removed from the third will by the testatrix, or by her direction. (Smock v.Smock, 11 N.J. Eq. 156; In re White's Will, 25 N.J. Eq. 501;Holcombe v. Holcombe, 39 N.J. Eq. 592.) Of course if her signature was torn from that will by an unknown person without her knowledge or consent, such mutilation is not evidence of intent of the testatrix to revoke that will.
Text writers say that what may appear to be a revocation by mutilation or otherwise is not effective as such where the proofs show that there was no conscious intention to revoke, as for instance where the revocation was procured by fraud or through error, or where the testator was unduly influenced to commit the act (Schouler on Wills (5th ed.) 476 § 384-385; Thompson onWills (2d ed.) 197 § 150) and in cases of conditional revocation or revocation by mistake, the doctrine of dependent relative revocation may be invoked for the purpose of restoring and giving effect to a will which the testator has attempted to revoke upon the erroneous assumption that he has substituted for it another valid will and that, but for his mistaken belief, he would have preferred to have effect given to the earlier will.
The doctrine as stated in 68 C.J. 799 § 483 is:
"While the intention to revoke may be conditional, if the revocation is subject to a condition which is not fulfilled the revocation does not take effect. This doctrine is known as that of dependent relative revocation, and is usually applied where the testator cancels or destroys a will or executes an instrument intended to revoke a will with a present intention to make a new testamentary disposition as a substitute for the old, and the new disposition is not made or, if made, fails of effect for some reason." *Page 178 
The doctrine is discussed and approved in 62 A.L.R. 1401; in33 Harvard Law Review 337; in Clapp on Wills andAdministration in New Jersey 78 § 41; in Schouler on Wills
(5th ed.) 495 § 398; in Thompson on Wills (2d ed.) 220 §168, and in 1 Jarman on Wills, 294. The conclusion reached by those authorities after reviewing the English and American authorities therein cited, is that when a will is revoked or mutilated by a testator on the assumption that he has made a subsequent valid will which proves to be invalid, the revocation of the first will may be deemed to be ineffective and it will be reinstated as an operative and effective testamentary disposition. The doctrine is akin to the doctrine of revival of an earlier will by the destruction by the testator of subsequent wills executed by him, which subsequent wills may or may not have contained provision for revocation of the preceding wills (Randall v. Beatty, supra; In re Diament's Estate, supra; Inre Block, supra) and it has been recognized in this state, even though held inapplicable to the particular case under consideration. (See In re Frothingham's Will, 75 N.J. Eq. 205;reversed, 76 N.J. Eq. 331; Smith v. Runkle, 97 Atl. Rep. 296;
affirmed in part and reversed in part, 86 N.J. Eq. 224, and86 N.J. Eq. 257; In re Allen's Will, 88 N.J. Eq. 291; affirmed,89 N.J. Eq. 208; In re Klipstein, 2 N.J. Mis. R. 41.) The doctrine cannot be said to be of general application to all cases in which an earlier will has apparently been revoked by mutilation either before or after execution of an invalid later one. The intent of the testator in performing an act which apparently revokes his earlier will must be sought and determined in each case and thus a question so difficult of correct solution is presented that the revocation should stand unless it is clearly demonstrated in a particular case that he would have desired, in the event his "last" will proves to be invalid, that effect should be given to the earlier one.
When a testator executes several wills it is because of conditions present at the time of each new act which to his mind make his previous wills unsatisfactory means of disposing of his estate. In the instant case the testatrix made three wills prior to the one set aside, the second and third differing *Page 179 
in certain respects from the first will and from each other and the third specifically revoking all former wills, so that when she executed her third will ten years after the date of her first one, that third will being her voluntary act as I shall hereinafter show, surely represented her testamentary wishes as of that time and it would be a strained assumption that she intended her first will under any circumstances to be considered as the medium through which she desired to make disposition of her estate after her death, even though she failed to cancel or destroy that will.
The record here and the affirmed opinion of the Prerogative Court on the contested probate of the testatrix' fourth will show that the third will was prepared by an attorney whom the testatrix consulted alone with regard to her testamentary desires and to whom she then gave instructions as to provisions for her will; that after he had drafted the will he brought it to her home and in the privacy of her room read it to her and discussed its provisions and when she had expressed her satisfaction with it, he had her execute it in accordance with statutory requirements. That will was her testamentary act freely performed without interference or influence by any one and it made provision for her two sisters and their children, all of whom were natural objects of her bounty, and followed rather closely the scheme of her second will. On this appeal it is admitted that there was no influence exerted to induce her to make that third will. Two days after she had executed it, a person who stood in a confidential relation to her and who had a stronger mind than she had, called on her and as the result of his conference with her induced her to execute her fourth will, in which the changes made from the provisions of the third will were of considerable benefit to that person. It was because of his acts in connection with the preparation and execution of the fourth will, that on appeal from its probate the court found that the testatrix had not exercised independent judgment but had executed that will as the result of undue influence exercised on her, and set it aside as invalid.
It is clear that having executed four wills the testatrix did not wish to die intestate and I am satisfied that her third *Page 180 
will expresses her true testamentary wishes which, but for the improper influence to which she was subjected, she would not have changed in the seventeen days she survived execution thereof. The result of such influence was that she was not only induced to execute a fourth will, but to tear almost immediately thereafter her signature from her third will. That act of mutilation cannot be thought to have been done with the absolute intention to revoke that will under all conditions, but as conditional on her belief that her fourth will was valid, in which belief she was mistaken. Had she been conscious that she was being led into executing a will which departed from the provisions of her voluntarily executed third will to the disadvantage of those who were natural objects of her bounty for whom she had just made provision, and to the advantage of the person who was luring her on, she would not have executed her fourth will and her third will would have stood unmutilated.
The order or decree of the Morris County Orphans Court is affirmed. *Page 181