CHARLES A. HILYARD, appellant,

*v.*

JAMES WOOD et al., respondents.

[Decided February 28th, 1906.]

1. Where the will of a testatrix, written in ink, remained in her possession until her death and was then found with certain parts erased by the use of a lead pencil—*Held*, that the erasures were made by the testatrix *animo revocandi*, and the will should be probated with the canceled parts omitted.

2. Where it cannot be said that a will contest is without merit, an allowance of a counsel fee to a party to the contest is proper.

On appeal from a decree of the orphans court admitting to probate the will of Annie R. Wood.

*Mr. George Gilbert,* for the appellant.

*Mr. Eckard P. Budd,* for the respondents.

BERGEN, VICE-ORDINARY.

The contested paper was written in ink, and duly executed by Annie R. Wood, as and for her last will and testament, November 12th, 1898, and thereafter remained in her possession until her death, January 28th, 1905.

Three days before her death, while confined to her bed, she took from under her pillow some keys, which she handed to her maid, and directed her to lock up everything and then give the keys to her physician for safekeeping. The drawers of the bureau in which the will was afterward found being already locked, the servant locked the closets in the room and gave the keys to the physician, who retained them until two days after Mrs. Wood's death, when he gave them to a Mr. Craig, a counselor-at-law, who had represented Mrs. Wood in her lifetime.

Mr. Craig, with Mr. Albert McCully, a brother of Mrs. Wood, and Mr. Gilbert, the proctor of the appellant, went to the late residence of Mrs. Wood, and, finding the drawers of the bureau locked, opened the upper one with one of the keys, and there, among other papers of the deceased, found what appeared to be her last will and testament, it being the paper admitted to probate.

Portions of this will had been erased by drawing pencil lines through three paragraphs, and partly through a fourth. The orphans court of Burlington county decided that the erasures did not amount to a revocation and admitted the will to probate as originally drawn, ignoring the erasures; from that determination this appeal was taken.

The clauses of the will which are entirely erased are the following:

(*a*) "I give and bequeath to my nephew, Frank Shaw, one thousand dollars." (*b*) "I give and bequeath to my waiting maid, Mary Muss, as a token of my appreciation of her good qualities and kind attentions, my pastel picture, and five hundred dollars." (*c*) "I give and bequeath to my friend, Charles Stokes, of Beverly, New Jersey, all my books."

The item partially canceled reads as follows:

"I give and bequeath to James Wood, mother Wood's picture and the gold watch of his brother, my beloved deceased husband."

The canceling lines of this paragraph begin after the word "picture," and their effect is to erase all of that part of the paragraph which gave the watch and to leave in force the bequest of the picture.

An examination of the will shows that the erasures were intended to be an effectual cancellation of the parts to which they apply, there being three or more lines drawn through each of the parts intended to be eliminated, and the act to be inferred from the result appearing is an erasure with intent to obliterate the portions subjected to the pencil marks.

The first point raised by the respondents is that it does not appear that the erasures were made by the testatrix, or in her presence and by her direction and consent, as required by the

statute of wills. The testimony shows that immediately after its execution the will was taken by Mrs. Wood, and so far as it appears, was never out of her possession nor seen by any other person until after her death, when it was found, among other papers, in her bureau drawer, locked with a key kept in her possession while in bed during her last illness, and which she only committed to the keeping of her physician when approaching death became apparent. This key was given by the physician to the legal adviser of Mrs. Wood, and was never out of his possession until used to open the drawer in which the will was found in its present condition.

Under such circumstances, if a will be found canceled in whole or in part, the presumption is that the alterations were the acts of the testator, done *animo cancellandi*. *Smock* v *Smock, 11 N. J. Eq. (3 Stock.) 156; In re will of Kirkpatrick, 22 N. J. Eq. (7 C. E. Gr.) 463; In re will of White, 25 N. J. Eq. (10 C. E. Gr.) 501*. There is no evidence in this case which tends in the slightest degree to overthrow or repel this presumption.

The cancellations being thus chargeable to the testatrix, we must next consider the question, were they made *animo revocandi*. The respondents insist that as the erasures were made with a pencil instead of ink, they are, *prima facie*, deliberative, and not final, as would be the presumption if done with ink, and in support of this cite *Francis* v. *Grover, 5 Hare 39*. In that case the question arose on an application for a new trial, the trial court having refused to charge the jury that a pencil line drawn through the words of bequest was, *prima facie*, final, and not deliberative. The report of the case throws no light upon the character of the erasure, and an inspection of it might have justified the court in submitting the question to a jury. The vice-chancellor hearing the application said that, omitting the case of *Mence* v. *Mence, 18 Ves. 348*, it appeared to him that, in certain cases which he mentioned and to which I shall refer, "the learned judges have all considered that a pencil alteration may be final or deliberative, and that from the nature of the act they considered it, *prima facie*, deliberative, and not final." The cases cited by the vice-chancellor do not,

in my opinion, warrant so broad a proposition. In *Parkin* v. *Bainbridge, 3 Phillim. 321,* parts of the will had been erased with a pencil. The court, in passing upon the question, said: "It is as valid, if it is intended as a cancellation, as if it was in ink, but it is more equivocal as to intention, persons are apt to make pencil marks as memoranda. Till I am better instructed I shall hold them to be equivocal. I shall hold my opinion how I shall decide, if no facts can be alleged on either side." It did not become necessary for the court to express the opinion thus withheld, because the appearance of the paper justified a presumption that the act was deliberative, and all that was said regarding the *prima facie* effect of the pencil marks was *obiter.* Another case cited was *Lavender* v. *Adams, 1 Add. Ecc. 406,* where, after the pencil alterations were made, the testator notified his solicitor that he should have occasion shortly to make some alterations in his will, and the *prima facie* force of the pencil alterations was not passed upon, the court holding that from what appeared on the face of the papers, coupled with the testimony, the alterations could not be taken as final. In *Edwards* v. *Astley, 1 Hagg. 493,* the alterations were made some in ink and some with pencil, and the determination was put upon the ground that a presumption was raised that the more durable material would have been used in each case if the act was final as to all. While this case approaches closely *Francis* v. *Grover, supra,* it is evident that the court was persuaded that the intention of the testator should be gauged in that case by the difference in the character of his acts. In *Hawkes* v. *Hawkes, 1 Hagg. 321,* the erasures were made partly in ink and partly with a pencil, but the case was controlled by proof of testator's declarations. Thus in each case to which I have referred, and which was cited in support of the finding in *Francis* v. *Grover, supra,* the conclusion was rested upon the character of the act, as shown by the paper, or upon testimony which in each case disclosed the intention of the testator to be deliberative, and not final.

On the question whether a pencil erasure is entitled to the same *prima facie* presumption as if done in ink, *Dickinson* v. *Dickinson, 2 Phillim. 173,* is quite in point. The alterations were

in pencil, and on the envelope in which the will was enclosed the testator had written in pencil a bequest to his wife. In deciding this case Sir John Nicholl said: "The question is whether probate is to be given of this paper, as it was originally executed or with the alterations. The alterations being in pencil increases the difficulty. It has been argued from these circumstances that they must be considered as merely deliberative, but there is no doubt that in point of law they must be considered as equally valid as if made in ink, provided the deceased intended them to take effect. *Prima facie,* it may be supposed, under the circumstances, that the alteration was intended, and as such the paper at least ought to go to proof. I say *prima facie* because other extrinsic circumstances may hereafter be offered which may show they were only deliberative. * * * The instrument was put away securely in his repository with money and other papers of his concern—it was not at hand as if he was deliberating upon it—his death was not sudden, which confirms the idea that he did mean and intend this paper to operate in its present form." In *Mence* v. *Mence, supra,* the erasures were made with a pencil and their *prima facie* effect was not questioned on the argument, the court declaring that the cancellation was complete. In *Appeal of Tomlinson, 19 Atl. Rep. 482; 133 Pa. 245,* the court held that "as indicative of the testator's intent the pencil erasures spoke quite as certainly as if they were in ink." *In re will of White, supra,* the seal, as well as a part of the testator's signature, was torn off; the rest of his signature and the signatures of the witnesses were erased with heavy pencil marks. The ordinary, considering these circumstances, said: "The tearing out of the seal and of part of the signature of the testatrix and the obliteration of the names signed to the will are a cancellation of the will." This case is the only one reported in this state, so far as I have been able to discover, which considers the question of cancellation by pencil, but its effect on the precise question is modified by the fact that the seal and a part of the testator's signature was torn off. In the absence of any positive adjudication of the question by the courts of this state, I shall hold that if the character of the pencil erasure plainly indicates an intent to obliterate the marked portions, it is, *prima facie,* as

effectual as if done with ink, and that the difference in the material used creates no stronger presumption in favor of one method than of the other. It is the intent which controls, and in the absence of any evidence other than the paper presented for probate the testator must be presumed to have intended the pencil erasures to be as final as if done with ink.

The manner in which the erasure is made, whether with ink or pencil, the extent of it, and its effect upon other uncanceled portions of the will, may prevent the presumption of finality, but such repellant circumstances apply with equal force to ink or pencil cancellations.

In my judgment a clear and distinct erasure made with a pencil is entitled to the same *prima facie* consideration as if made with a pen and ink. As was said by Chief-Justice Elliot in *Woodfill* v. *Patton,* 76 *Ind.* 575, "it cannot be any the less a mutilation if the signature is marked out with a pen, pencil or other implement which erases, cancels or obliterates." In that case the signature was blackened and marked by a common lead pencil.

In the case we are considering the erasures bear every indication of being the final act of the testatrix; repeated lines are drawn through the portions intended to be canceled in a way that clearly indicates an intent to obliterate them. The paper discloses no indication that the act was equivocal, either by marginal notes or interlineations intended to supply the parts erased; omitting the excised portions creates no ambiguity in what remains uncanceled, and nothing appears from which a want of finality may be inferred. The *prima facie* presumption that the acts of the testatrix were final and not deliberative, is strengthened by the testimony from which it appears that Mary Muss, whose legacy was one of those canceled, died more than a year before the testatrix, and as this gift was to a servant as a reward for faithful attentions, and manifestly a personal one, her death removed the object of the bounty and furnishes a good reason for the revocation. The legacy to James Wood was erased in part, so much of it as gave him the watch of the deceased husband of the testatrix being canceled, while that relating to his mother's picture was allowed to stand uncanceled, al-

though both gifts were included in the same paragraph. The testimony shows that the watch had been given to another by the testatrix, and we are justified in the presumption that the testatrix canceled this gift because its subject had already been disposed of by her.

As to the remaining legacies revoked by the cancellations, two in number, it appears that the testatrix had expressed her dissatisfaction with the two legatees, and it is a reasonable inference that she had changed her intentions regarding her bequests to them.

My conclusion is that the erasures were made by the testatrix *animo revocandi,* and that the decree below should be reversed and the will probated with the canceled parts omitted, it being well settled that the cancellation of a part of a will revokes the legacies canceled, and does not affect the residue of the will.

An appeal was also taken from the decree of the orphans court allowing a counsel fee to the respondents. It cannot be said that the contest was without merit, and I am of the opinion that such allowance was proper, and therefore that appeal will be dismissed.