### *In re* FOX'S ESTATE.

### MICHIGAN TRUST CO. *v.* FOX.

1. APPEAL AND ERROR—FINDING BY COURT—EVIDENCE.
   The finding of the court, sitting without a jury, cannot be disturbed, on appeal, if there is any evidence to sustain it.

2. WILLS—REVOCATION OF PART—STATUTORY CONSTRUCTION.
    Under section 9270, 3 Comp. Laws (3 Comp. Laws 1915,
    § 11825), a testator might, either by burning, tearing,
    canceling, or obliterating, revoke a part of his will if the
    act was done *intentione revocandi*.[1]

3. SAME—REVOCATION—PENCIL.
    The fact that a pencil instead of a pen was used in canceling
    a section of a will is not significant; either instrumen-
    tality may be used.

4. SAME—REVOCATION OF PART—FINDING OF COURT—INTENT.
    Where the will was in the possession of the testator up
    to the time of his death, and it is conceded that the marks
    obliterating a section were made by him, *held*, sufficient
    to sustain the finding of the court below, that said section
    was obliterated with the intention of revoking it.

Error to Kent; Perkins, J. Submitted June 14,
1916. (Docket No. 111.) Decided September 26,
1916.

The Michigan Trust Company presented for probate
the last will and testament of Charles Fox, deceased.
The will was allowed in the probate court, and Cor-
inne H. Fox appealed to the circuit court. The Ma-
sonic Temple Association intervened claiming interests.
Judgment for contestant as to portion of said will.
Intervener brings error. Affirmed.

*E. A. Maher,* for appellant.

*Norris, McPherson, Harrington & Waer,* for appel-
lee Fox.

In this case the contention arises between the Ma-
sonic Temple Association of Grand Rapids and Cor-
inne H. Fox, contestant, and involves only one section
(18) of the will of Charles Fox. The will was made

---

[1]Upon the question of revocation of part of will by mutilation,
destruction, cancelation, etc., see notes in 38 L. R. A. (N. S.)
797; 51 L. R. A. (N. S.) 169.

by the testator on October 22, 1906, and consisted of 22 sections. The substance of the various sections was as follows:

"1, 2, 3. A devise and bequest of all the estate to the Michigan Trust Company as trustee, to have the care and management of the estate subject to provisions of the will, to pay all debts and funeral expenses, and further:

"4, 5. To pay the Union Benevolent Association and Butterworth Hospital of Grand Rapids $2,500 each.

"6. Creating a trust fund of $6,000 for the care and maintenance of the cemetery on Grosse Ile, Mich.

"7. To permit the contestant, Corinne H. Fox, the use of his homestead, during her lifetime, or at her option to have another homestead purchased at the cost of $25,000 and conveyed to her.

"8. To permit the contestant to have the use of the household furnishings, etc., during her lifetime.

"9. To pay the contestant $35,000, in sums of $5,000 each year, with provisions in favor of Louise Rucker, Sarah Eliza Whitall, and Julie M. Hinsdill, in the event of the death of contestant before all of the payments should be made.

"10. To pay the testator's cousin, John Anthony D. Rucker, $25,000, in sums of $5,000 each.

"11. To pay to the contestant the income of the residue of the estate during her natural life, this being in lieu of dower and of any interest that she might have in the estate.

"12, 13, 14, 15. After the decease of the contestant to pay to Louise Rucker, Sallie Rucker, Sarah Eliza Whitall, and Julie M. Hinsdill $600 per annum each during their respective lives.

"16. After the death of the contestant to pay the net income of the residuum of the estate to John Anthony D. Rucker during his natural life.

"17. Upon the decease of John Anthony Rucker the entire residuum of the estate should go to said Rucker's child or children.

"18 (1). In case the said John Anthony D. Rucker should die without leaving any child or children surviving, the executor was directed to convey certain real estate on South Ionia street in Grand Rapids to certain

persons as trustees for the several Masonic bodies of the city of Grand Rapids.

"18 (2). 'In case the said John Anthony D. Rucker shall die without issue him surviving, and after the death of my said wife, Corinne H. Fox, I direct my said executor to transfer, assign and deliver to the University of the State of Michigan, my father's picture.'

"19. 'In case the said John Anthony D. Rucker, shall die without issue him surviving, and after the death of my wife, Corinne H. Fox, I direct my said executor to transfer, assign and deliver to the board of library commissioners of the city of Grand Rapids, Michigan, and their successors, forever, all my books, pictures, paintings, engravings, and works of art.'

"20. 'In case the said John Anthony D. Rucker shall die without any child or children him surviving, and after the decease of my said wife, I direct my said executor to transfer, assign, and convey all the rest, residue and remainder of my estate, both real and personal in equal shares and proportions to the Union Benevolent Association of the city of Grand Rapids, Michigan, and to Butterworth Hospital of the said city of Grand Rapids, for the uses and purposes of those hospitals forever.'

"21. 'In case I shall die leaving a child, or children me surviving, then and in that case, none of the paragraphs of this my will except paragraphs 1 to 9 inclusive, and paragraph 22 shall take effect.'

"22. 'I hereby nominate and appoint the Michigan Trust Company of the said city of Grand Rapids, Michigan, as executor of this my last will and testament, hereby revoking all other wills by me made.' "

The testator died on April 16, 1915, at Cincinnati while on his way from Augusta, Ga., to Grand Rapids, his home. In his lifetime deceased had a private safety deposit box in the Michigan Trust Company. This box was examined after his death, but no will was found, although he was in the habit of placing all valuable papers therein. Later an examination was made by his widow, the contestant, of a trunk which he and

his wife had had with them in Augusta. There the alleged will was found among other papers of no particular value, such as bills, receipts, and memorandums. At the time of its discovery, and as it was presented in the probate court, it bore many evidences of obliteration and interlineation. Among the principal changes and obliterations are the following:

Section 4, though still legible, was entirely obliterated by drawing with a heavy black pencil a line through each line of said section.

Section 5. The words "twenty-five hundred" are changed to "five thousand," and the words "to be invested by" are inserted, and the words "one year" changed to "two years."

Section 6. The word "six" is changed to "seven" in front of the word "thousand."

Section 7. The word "five" after the word "twenty" and before the word "thousand" is obliterated.

Section 8 is unchanged.

Section 9. The words "five thousand dollars" are obliterated and "$2,500" in figures written above in the second line of said section and again in the third line, and the succeeding twelve lines of said section are wholly obliterated, though still legible, by drawing heavy lines through the typewriting.

Section 10 is likewise wholly obliterated in the same manner.

Section 11. After the words "net income" there is inserted the words, "except as hereinafter mentioned."

Sections 12 and 13 are wholly obliterated by scribbling over them with heavy black pencil marks.

Section 14. The sum of "six hundred" is stricken out and "one thousand" written in place thereof, and the last line of said section, "from the decease of my said wife to the death of the said Sarah Eliza Whitall."

Section 15. The words "six hundred" are stricken

out and "one thousand" written in; the word "semi-annual" stricken out and "monthly" written in.

Sections 16, 17, 18(1), and 18(2) are wholly obliterated by the use of heavy black pencil lines.

Section 19. The first two lines are obliterated. They read as follows:

"In case the said John Anthony D. Rucker shall die without issue him surviving, and after the death of my wife, Corinne H. Fox."

Sections 20, 21, and 22 were not tampered with.

The signature of the testator and the attestation clause, with the signatures of the witnesses, were free from any marks or interlineations. It is beyond question that all of the interlineations and obliterating marks placed upon the original instrument were made by the testator in his lifetime.

In order that the profession may have a knowledge of the obliterating marks we reproduce herewith a copy of the fourth page of said will containing clauses 15, 16, and 17 and the first portion of clause 18.

It will be borne in mind that clause 18 is the one over which the controversy arises in this case. Upon presentation to the probate court the will was admitted to probate in its entirety, and as if it bore no obliterating marks or interlineations. Upon appeal to the circuit court the court, without a jury, held that all the unmarked clauses and all the clauses which were merely modified in phraseology or in amount should stand as the will of the testator; the interlined clauses to stand as originally written. With reference to clause 18 the court said:

"Clause 18 appears to have been more thoroughly obliterated than any of the others. It appears, also, that the purpose, plans, and place of meeting of the various Masonic bodies mentioned in this clause were

- 4 -

15. ... net income of my pers... ...ws. ...lie .. Tinsdill, ... ...f my wife Corinne T. Fox, the sum of ... ...rm... ..., in semi-... payments, from the death of my said wife till the death of the said Julie M. Hinsdill.

16. After the decease of my wife, Corinne H. Fox, I give and the ...t index ... ll the residuum of my estate, ...to my cousin, John Anthony D. Rucker, the son of Robie ... ...ow of Trenton, ..., of said, Michigan, for and during his natural ...

17. ... said John Anthony D. Rucker ... ... ...children the entire residuum ... ... ..., ...th ..., .....ul, ...v... ...

18. In case the said John Anthony D. Rucker ... ll die without ... ... .... ... ...viding, ... ... m... ...d ...er...t...ng real and to situated ... ...ite located there..., in the ... city of ... ...pids, Michigan, ...d ... in the said occupied by ...sonic bodies, to ...rk ...rris, John H. P. Hughart, Rt. Rev. John .. ...Chemick, ...om.s F. Sinclair, and George M. L ther, or the survivor or survivors of ..., ...d their successors to be chosen ...red ... provided, ... the said city of Grand ...id s, and their successors and assigns, forever, as trustees and in trust for the joint use and benefit for Masonic uses and purposes of the following Masonic bodies ... said city of Grand Rapids, all the lodges of Free and Accepted ...sons, which are now or shall hereafter be in existence, or which may hereafter be constituted in ... o said city of Grand Rapids, under charters from the Grand Lodge of Free and Accepted ...sons of the State of Michigan; all the chapters of Royal Arch ...ns which are now, and shall hereafter continue to be in existence, or which may hereafter be constituted in ... th city of ... ...pids, under charters from the Grand Chapter of Royal Arch ...ns of the State of Michigan; all the Councils of Royal and Select ...sters which ... now and shall hereafter continue to be in existence, ... ...ch may here-

changed after the execution of this will; that a new building has since been erected by these bodies which they are now occupying; that they have vacated the building mentioned in this clause, and that they contemplated such vacation from the time the plans for a new Masonic temple were conceived. Had the testator knowledge of these plans there is every reason to believe that he would desire to revoke this clause. There can be no doubt of such knowledge. The marks on this clause indicate it. They also indicate a clear intent to revoke it."

The record discloses that prior to the hearing in the circuit court the Butterworth Hospital, the Union Benevolent Association Hospital, and John Anthony D. Rucker, together with his wife, had assigned any interest which they or either of them had or might have under the will to Corinne H. Fox, widow and contestant. From the order establishing the will in part, the contestant does not appeal.

The intervener, the Masonic Temple Association, reviews the determination of the court below, as its interests are affected by the ruling of the court to the effect that section 18 was revoked by the testator by obliteration with the intention of revocation.

BROOKE, J. (*after stating the facts*). The statute covering the question involved (3 Comp. Laws, § 9270 [3 Comp. Laws 1915, § 11825]) follows:

"No will nor any part thereof shall be revoked, unless by burning, tearing, canceling or obliterating the same, with the intention of revoking it, by the testator, or by some person in his presence and by his direction; or by some other will or codicil in writing, executed as prescribed in this chapter; or by some other writing, signed, attested and subscribed in the manner provided in this chapter for the execution of a will; excepting only that nothing contained in this section shall prevent the revocation implied by law from sub-

sequent changes in the condition or circumstances of the testator."

Under this statute it is the assertion of the intervening appellant that the burden of proof rests upon the party asserting a revocation to establish by competent evidence, not only an intent to revoke, but an appropriate act to work a revocation. It is said:

"An intention to revoke cannot be presumed from acts that are in themselves incomplete and inconclusive, and are as readily accounted for in some other way" (citing *Safe Deposit & Trust Co.* v. *Thom,* 117 Md. 154-163 [83 Atl. 45]; 30 Am. & Eng. Enc. Law [2d Ed.], p. 633).

And it is argued that, even admitting the interlineations and obliterating marks were made by the testator in his lifetime while mentally competent, the deduction that the obliterating marks were made with the intention of revoking the sections obliterated cannot properly be drawn. Counsel says:

"The instrument with the markings upon it is too loose and incongruous to be considered as expressing his intention, and such parts of the instrument as were entered in the judgment of the court below, as the will of the deceased, do not, by themselves, afford sufficient data for a determination of what the testator meant."

In considering this appeal we must again point out that the propriety of the judgment of the court below in establishing certain portions of the will is not before us for consideration. We are only concerned in determining whether the court was correct in holding that section 18 was obliterated by the testator with the intention of revoking it. Assuming that the burden rested upon the contestant to show that section 18 was revoked by the testator in his lifetime, counsel for contestant assert that that burden has been met.

In considering the matter in this court we are dealing with the finding of a court without a jury—a find-

ing of fact to the effect that section 18 was obliterated by the testator with the intention of revoking it. Under our authorities, if there is any evidence to sustain such finding, it cannot be disturbed in this court.

While we have no case in Michigan involving a partial revocation controlling of the case at bar, there is an abundance of authority in other States under statutes identical, either in language or principle, with our own. A few of them follow: *In re Wikman,* 148 Cal. 642 (84 Pac. 212) ; *Varnon* v. *Varnon,* 67 Mo. App. 534, where the court states:

"This statute means that there may be a partial revocation of a will; the balance remaining intact. This is announced as the law in jurisdictions governed by similar statutes" (citing *Bigelow* v. *Gillott,* 123 Mass. 102 [25 Am. Rep. 32]; Schouler on Wills, §§ 389, 397; *Tomlinson's Estate,* 133 Pa. 245 [19 Atl. 482, 19 Am. St. Rep. 637]).

The Massachusetts statute (Gen. Stat. 1860, chap. 92, § 11), covering the question, is as follows:

"No will shall be revoked, unless by burning, tearing, canceling, or obliterating, the same with the intention of revoking it, by the testator himself, or by some person in his presence and by his direction."

It will be noticed that this statute omits the words, "nor any part thereof," or "any clause thereof," yet under this statute the court in *Bigelow* v. *Gillott, supra,* held a partial revocation might be accomplished, saying:

"The power to revoke a will includes the power to revoke any part of it."

See, also, *Home of the Aged* v. *Bantz,* 107 Md. 543 (69 Atl. 376) ; *In re Kirkpatrick,* 22 N. J. Eq. 463; *Hilyard* v. *Wood,* 71 N. J. Eq. 214 (63 Atl. 7) ; *Brown* v. *Brown,* 91 S. C. 101 (74 S. E. 135) ; *Brown's Will,* 1 B. Mon. (40 Ky.) 56 (35 Am. Dec. 174) ; *Well's Will,*

4 T. B. Mon. (20 Ky.) 152 (16 Am. Dec. 150) ; *Lin-nard's Appeal,* 93 Pa. 313 (39 Am. Rep. 753) ; *Tudor* v. *Tudor,* 17 B. Mon. (56 Ky.) 383; *Safe Deposit & Trust Co.* v. *Thom, supra; Barfield* v. *Carr,* 169 N. C. 574 (86 S. E. 498).

Counsel for appellant contends that a history of the legislation indicates an intention on the part of the legislature to permit revocation of a will only as a whole, and that the act of revocation to become operative must be such as to destroy the effect of the entire instrument. Counsel indulge in a considerable discussion upon statutory construction which we do not deem it necessary to follow. The plain language of the statute itself is sufficient to answer the contention of the appellant, "No will, nor any part thereof." The opening words of the section are plain, unambiguous, and easy of comprehension; they mean just what they say; and, in the absence of all authority, it would be necessary to hold that the legislative intent, *as expressed in the language used,* was that a testator might, either by burning, tearing, canceling, or obliterating, revoke a part of his will if the act was done *intentione revocandi.*

The fact that a pencil, instead of a pen, was used in canceling or obliterating section 18 is not significant. Either instrumentality may be used. *Hilyard* v. *Wood, supra; Tomlinson's Estate, supra; McIntyre* v. *McIntyre,* 120 Ga. 67 (47 S. E. 501, 102 Am. St. Rep. 71, 1 Am. & Eng. Ann. Cas. 606).

Was there evidence to sustain the finding of the court that section 18 was obliterated with the intention of revoking it? A long line of authorities in various States hold that, where the will is found among the testator's papers with lines drawn through or across certain phrases or clauses, a presumption arises that the cancellation was made by the testator with

the intent to revoke. In the case at bar recourse need not be had to the presumption as to who made the obliterating marks upon section 18. It is conceded they were made by the testator. The question of intention still remains. A similar question arose in the case of *In re Wikman, supra.* There the court said:

"The only remaining question is whether the evidence sustains the finding, under No. 4, that the cancellation was done by the testator with the intent and purpose of revoking that part of the will by which appellant was appointed executrix. This is a finding of fact, and must be sustained if there is any reasonable amount of evidence supporting it. It appears in this case, as before stated, that the will was in the possession of the testator from the time of its execution until his death; that immediately after his death it was found among his effects in his trunk; and that when so found the ink lines were over and through the words as above described. These circumstances were sufficient to warrant the court in making the finding, and it was substantially so held by this court in *Estate of Olmsted,* 122 Cal. 224 (54 Pac. 745)."

See, also, *In re White,* 25 N. J. Eq. 501; *Home of the Aged* v. *Bantz, supra; In re Hopkins' Will,* 172 N. Y. 360 (65 N. E. 173, 65 L. R. A. 95, 92 Am. St. Rep. 746) ; *Hilyard* v. *Wood, supra; Tomlinson's Estate, supra; McIntyre* v. *McIntyre, supra; Safe Deposit & Trust Co.* v. *Thom, supra;* 1 Jarman on Wills, p. 119; 1 Williams on Executors, p. 85; 1 Redfield on Wills, p. 307; *Burton* v. *Wylde,* 261 Ill. 397 (103 N. E. 976).

Whatever may be said as to the propriety of probating a portion of this instrument as the will of the testator, we have no hesitation whatever in agreeing with the finding of the circuit judge that section 18 was obliterated by the testator with the intention of revoking it. Error is assigned upon the admission of

certain testimony. As the case must be disposed of on the fundamental question discussed, it is unnecessary to examine those assignments.

The judgment is affirmed.

STONE, C. J., and KUHN, OSTRANDER, BIRD, MOORE, STEERE, and PERSON, JJ., concurred.