In the matter of the application for the probate of the last will and testament of MICHAEL ALLEN, deceased.

[Submitted August 10th, 1917.    Determined September 21st, 1917.]

1. Canceling or tearing up a will by mistake or accident without intent to revoke it, does not revoke it.

2. To nullify revocation done under testator's erroneous belief as to the laws of intestacy, statements made by or to testator are not alone sufficient unless they are so closely related to the physical act of revocation as to clearly form part of the *res gestæ*.

3. The evidence in this case *held* not sufficient to nullify the revocation of a will by tearing the signature therefrom by the testator.

On petition, &c.

*Mr. S. Huntley Beckett* and *Mr. Lewis Starr,* for the petitioner.

*Mr. David O. Watkins,* for Elizabeth Calver, Jennie C. Calver and Hannah A. Foster, respondents.

*Mr. Austin H. Swackhamer,* for James S. Pedrick, respondent.

LEAMING, VICE-ORDINARY.

This is an application made to the ordinary for the probate of a certain ·paper-writing as the last will and testament of Michael Allen, deceased.    Deceased is. herein· referred to as "testator" for convenience of reference.    All persons in interest have been duly cited to appear and have been fully heard.

The paper-writing which has been produced for probate was executed by testator as his last will and testament March 11th, 1884, and was by him revoked July 29th, 1916, by tearing his signature from the instrument.

There is no dispute touching the act of revocation.    The testimony is conclusive to the effect that testator tore his signature from the will with the definite purpose. to· render it wholly inoperative as a will.    His mental capacity to revoke the will and

his intention to do so are fully established. Nor did testator at the time or near the time disclose to anyone his reasons for revoking the will.

The contention of proponent is that the revocation was ineffective for the reason that testator misunderstood the law controlling the distribution of personal property of an intestate and that he would not have revoked the will but for such misunderstanding.

Testator left him surviving a sister of the whole blood and children of a deceased brother of the whole blood. Under the will, if it be probated, these relatives of the whole blood will take testator's entire estate, real and personal, testator's sister taking one-half and the descendants of testator's deceased brother taking one-half. Testator also left him surviving brothers and sisters of the half blood and descendants of deceased sisters of the half blood.

The misunderstanding of the law by testator which is now claimed to have existed and to have wholly occasioned his act of revocation of the will was his erroneous belief at the time that his entire estate would pass to his relatives of the whole blood in case of his intestacy in precisely the same manner contemplated by his will, to the total exclusion of his relatives of the half blood.

In support of that claim testimony has been introduced to the effect that about ten months before the act of revocation of the will testator was advised by an attorney-at-law that in case of his intestacy one-half of his property would go to his living sister of the whole blood, and the other half to the descendants of his deceased brother of the whole blood.

It seems impossible to doubt that advice to that effect was given at the time stated either to testator or to testator's sister and brought to the attention of testator. In giving this advice the attorney obviously overlooked the fact that he was defining the law of descent of real estate and that the law controlling the distribution of personal property was not the same either with respect to the rights of living brothers or sisters of the half blood as against those of the whole blood, or with respect to the rights of descendants of deceased brothers or sisters of either

the whole or half blood. Indeed as to the latter respect a recent decision of our court of errors and appeals was necessary to settle the law. See *In re White's Estate, 87 N. J. Eq. 607.*

There is also some testimony to the effect that as late as approximately one month prior to the cancellation of the will testator made a statement indicating his belief that the intestacy laws would bestow his property the same as it was bestowed by his will. It is the contention of proponent that the entire evidence justifies the conclusion that that was testator's belief at the time he revoked the will and that belief on his part was the sole cause of the revocation, and that in such circumstances the act of revocation must be regarded as a mistake and ineffective because lacking *animus revocandi.*

Our statute provides not only the method of making a will, but also the methods of revoking it after it has been made. The provisions touching revocation are:

"That all written revocations of wills shall be executed in the same manner as wills are hereby required to be executed, and when so made shall be sufficient to revoke any last will, or any part thereof." *4 Comp. Stat. p. 5870 § 25.*

"That no devise or bequest in writing, of any lands, tenements, hereditaments or other estates whatsoever in this state, or of any estate *per autre vie,* or any clause thereof, shall be revocable, otherwise than by some other will or codicil in writing, or other writing declaring the same, or by burning, canceling, tearing or obliterating the same by the testator himself or in his presence, and by his direction and consent; but all devises and bequests of any lands, tenements, hereditaments, or other estates whatsoever in this state, or of any estate *per autre vie,* shall remain and continue in force until the same be burnt, canceled, torn or obliterated by the testator or by his directions in manner aforesaid, or unless the same be revoked or altered by some other will or codicil in writing, or other writing of the devisor signed in the presence of three or more subscribing witnesses declaring such revocation or alteration." *4 Comp. Stat. p. 5861 § 2.*

The statute is silent touching mistake, accident or intent. It cannot be doubted, however, that "burning, canceling, tearing or obliterating" by testator by mistake or accident without intent to do so would be ineffective as a statutory revocation. *Smock* v. *Smock, 11 N. J. Eq. 156, 163.* But when a testator of sound mind has revoked his will by tearing his signature from it with a defined intent to destroy its operation as a will

so that there cannot be said to have been any accident or mistake touching the act of revocation or intent to revoke, the claim that the revocation was a mistake and ineffective because of testator's inaccurate understanding of the intestacy laws of his state enters a wholly different field of investigation. (See *In re Gluckman's Will, 87 N. J. Eq. 638,* as to the circumscribed field of mistakes in the execution of wills.) The former is a mutilation without intent to revoke, the latter a mutilation by the statutory method with intent to revoke. The misapprehension in the latter case is not even as to the primary consequence of the act of revocation, for the primary consequence of that act is intestacy, and intestacy is necessarily intended by the act of revocation in the absence of a substituted will. The misapprehension or mistake which is thus made the foundation of proponent's case is not that testator did not intend to revoke his will and die intestate, but is that testator misunderstood the law of intestacy at the time he revoked his will, and believed at that time that the intestate laws would transmit his entire estate in the some manner as the will which he revoked. But as such misapprehension may be said to be relevant to disclose the ultimate consequences which testator desired to flow from his act of revocation, it appropriately directs the present inquiry to an ascertainment of how far and by what means a court may properly inquire into and ascertain such ultimate intent or purpose of testator in a case of this nature.

It will be observed that the present case does not fall within the doctrine of dependent relative revocation. The tendency of modern cases is clearly to narrow that doctrine, but it does not appear to have been ever extended to any cases except those in which a substituted will has failed because of defects of execution or by accident. Nor does the present case fall within that class of cases where a revocation is on its face expressly grounded upon the assumption of certain facts which were not true, such as are not infrequently found in codicils to wills. See *Hayes* v. *Hayes, 21 N. J. Eq. 265.* Nor within the class of cases in which the act of revocation has been accompanied with a definite declaration of its purpose, as in *Perrott* v. *Perrott, 14 East 423.* In the present case nothing occurred at or near

the time the will was revoked to indicate what thoughts testator had in mind at that time. He merely sent his sister for his will, tore his signature from it and returned it to her without comment. His death did not occur until six months later. Whether at the time he revoked the will he intended to make a new will or die intestate he gave no intimation by words or conduct; nor did he at that time indicate what his understanding may then have been touching the laws of intestacy or his wishes as to the disposition of his property.

Even though it be assumed that testator's revocation of his will, in the erroneous belief and because of his erroneous belief that the law of intestacy was the same as the provisions of the revoked will, would be operative to nullify the revocation, I am unable to reach the conclusion that a court should undertake the ascertainment of testator's belief and intent in those respects solely by means of testimony of statements made to and by testator which are not so closely related to the physical act of revocation as to time or circumstance as to clearly form a part of the *res gestæ*. The grave danger of error in such an investigation is apparent; it not only encounters the dangers arising from possible inaccuracies of testimony, but is necessarily based upon the dangerous assumption that statements made by testator from time to time touching his proposed bestowal of bounty at his death accurately portray his real purposes, and the further dangerous assumption that his purposes have remained unchanged. Testator's belief as to the law and his attitude toward his various relatives and his intentions and wishes touching the possible objects of his bounty a month or more before the act of revocation may be theoretically assumed to have continued the same in the absence of evidence of change in one or all of the respects named; but human impulses are not immutable, and in the practical affairs of life testator's information touching the law and his attitude toward his relatives and his conception of duty to them may well have changed during that period without the knowledge of anyone. While such declarations of testator may be said to be admissible in evidence (*State* v. *Ready*, *78 N. J. Law 599*), if not too remote in time, their probative force is necessarily weakened to an extreme degree.

The testimony in this case is illustrative of the views already expressed. There can be no doubt that some ten months before the act of revocation testator was inaccurately advised touching the law of intestacy. If the testimony of testator's sister accurately reproduces testator's statements and testator accurately disclosed to her his purposes, testator still remained misinformed touching the law of intestacy a month or more before the act of revocation, and then desired his half blood relatives excluded from his bounty at his death. But testimony of witnesses of the half blood touching conversations with testator after the date on which he had been inaccurately advised touching the law of intestacy included suggestions that the advice which had been given by the attorney to testator related only to real estate and did not include personal property, and also included statements made by testator indicating that he desired his estate to be shared by his relatives of the half blood.

My conclusion is that the evidence is inadequate to justify a determination that the act of revocation was ineffective. Probate of the canceled will is accordingly denied.