Essex County Orphans· Court.

*IN THE MATTER OF THE ESTATE OF ADELAIDE ZELLA GORRELL, DECEASED.*

Decided February 10, 1941.

For the proponents, *Meyer M. Semel, McCarter, English & Egner (James Ozias), Ralph W. Hyatt* and *Lindabury, Depue & Faulks (Emory C. Risley).*

CLAPP, A. M. This application for probate comes before the Orphans Court because of doubts arising on the face of the holographic papers propounded. From the facts in the case five questions emerge.

The first question is whether the testatrix acknowledged the making of her signature. The attestation clause declares

she signed the will in the presence of the witnesses. But in fact she did not; for when first she showed them the testamentary papers they saw her signature already thereon. The witnesses substantially agree that her words to them then were that she wanted them "to witness her will." Out of these words and the circumstances here present, there can be spelled an acknowledgment of the signature. It has been put forward by counsel that the words constituted a declaration that the will was hers. This is true enough, but a declaration, such as that, cannot be taken as the equivalent of an assertion that the component parts of the will—and hence the signature, which she doubtless knew to be an important element of the will—were hers, too. The statute requires an acknowledgment of both the will and the signature; and it is elementary that the latter cannot be dismissed as a superfluity. The English decisions since the Wills act of 1837 (1 *Vict. c.* 26), under which no publication is required, have hence but a dubious force.

Nor do such words as "This is my will" become an acknowledgment of the signature thereon by virtue of the circumstance here present, that the witnesses saw the signature and well knew it to be hers, and the further circumstance that in all likelihood she had in mind that they recognized it as hers. Those circumstances will indeed serve to fill out a shorthand acknowledgment, but they cannot supply or excuse its omission. Nor can they break the one acknowledgment into the two required by the statute.

But, at least under such circumstances, the words of the testatrix asking the witnesses to sign as witnesses to her will do constitute an acknowledgment of her signature. The word *witness* signifies commonly to a layman a "person attesting genuineness of signature to document by adding his signature." Oxford Dictionary. Our statute uses the word similarly, requiring witnesses to the testator's execution of the will, that is, witnesses to his signature or acknowledgment thereof and to his declaration that the will is his. *Lacey* v. *Dobbs,* 63 *N. J. Eq.* 325; 50 *Atl. Rep.* 497 (pointing out that some other statutes require witnesses to the will, not to its execution). The request by testatrix to certain persons

to act as witnesses to her will constituted then in fact a request that they attest the genuineness of the signature to her will. It need not be decided whether her request of itself was impliedly an assertion that the signature was hers and in her own hand; it is enough to say that the request became plainly such an assertion, when coupled with the fact here that the witnesses saw her signature, and with the likelihood (I find present) that she knew they knew it as hers.

This result follows that of the most recent case in the Prerogative Court, *In re Sutterlin's Will*, 98 *N. J. Eq.* 307; 128 *Atl. Rep.* 624; affirmed on other grounds, 99 *N. J. Eq.* 363; 132 *Atl. Rep.* 115. The conflicting decisions of that court are pointed out in *Farley* v. *Farley*, 50 *N. J. Eq.* 434; 26 *Atl. Rep.* 178. See *In re Manner's Estate*, 72 *N. J. Eq.* 854; 66 *Atl. Rep.* 583; *In re Elmer's Will*, 32 *N. J. L. J.* 151; *In re Laing*, 17 *Id.* 266; *In re Buck*, 31 *Id.* 84.

On the second question of the case my opinion is that the first three of the six sheets here propounded as the will may not be admitted to probate. There is no testimonial evidence identifying these three sheets as being among those testatrix declared to be her will. The proof on the question of identification is solely circumstantial. At the time of the execution of the will she had the papers before her folded back, so that all the witnesses saw were the last two sheets which they signed. The argument of proponents is that where several loose sheets are found together in the testator's custody at his death (as these were found), then although the witnesses only observed the sheets they signed, the presumption is that all the sheets found together formed a part of the will at the time of execution. *Gregory* v. *Queen's Proctor*, 4 *N. C.* 620; *Smith* v. *Runkle*, 97 *Atl. Rep.* 296, 303; affirmed on this part of the opinion, 86 *N. J. Eq.* 257; 98 *Atl. Rep.* 1086. The argument rejects the authority that "loose sheets not connected by their internal sense" with the sheets bearing the testator's signature are presumptively written after that signature. *In re Maginn's Estate*, 278 *Pa.* 89; 122 *Atl. Rep.* 264.

However, if there be the presumption argued for by proponents (and no opinion is expressed as to whether or not

there is), it is here rebutted by both the text and the physical make-up of the six sheets propounded. In my view the last three sheets propounded, containing paragraphs 4th, 5th, 6th and 7th, with one or more other sheets containing paragraphs 1st, 2d and 3d of the will, were the sheets properly executed. Thereafter, becoming dissatisfied with the will, testatrix destroyed the sheet (or sheets) containing paragraphs 1st, 2d and 3d and made alterations in the remaining sheets of the will; and then or thereafter she set about, with these remaining sheets before her as a rough basis, to draw a new instrument, going so far as to draft the first three sheets now propounded which contain paragraphs "First," &c., through "Ninth." In so doing she changed much of the verbiage of the will she had executed, made possibly some additional gifts, but failed both to name an executor and to execute the new instrument.

A large number of circumstantial factors when taken together lead to the view I have expressed. They need not be detailed. The will then as executed consisted of the last three of the sheets here propounded and a prior sheet (or sheets) containing paragraphs 1st, 2d and 3d, that is now missing.

The third question of the case is whether testatrix revoked that missing sheet. Since the will was in her custody during her life, the presumption is that she destroyed the missing sheet with an intention to revoke it. This presumption is but a logical projection of well established principles applying where a will has been in a testator's custody in his lifetime. If that will cannot be found at his death it is presumed under these principles that he destroyed it *animo revocandi;* or if it is found, but with a portion of it cancelled, it is presumed that he cancelled that portion with like intent. *In re Davis,* 127 *N. J. Eq.* 55; 11 *Atl. Rep.* (*2d*) 233; *Hillyard* v. *Wood,* 71 *N. J. Eq.* 214; 63 *Atl. Rep.* 7.

It may be that the testatrix destroyed the first sheet because she was going to make a new will. Under the extraordinary doctrine of dependent relative revocation, a revocation induced by a misapprehension that a new will would be executed, has been held in New Jersey to be of no effect. *In re Frothingham's Will,* 75 *N. J. Eq.* 205; 71 *Atl. Rep.*

695; reversed (on the point that the plan to make a new will in fact was conceived after the revocatory act was performed) *Frothingham's Case,* 76 *N. J. Eq.* 331; 74 *Atl. Rep.* 471. Cf. in general, *Smith* v. *Runkle,* 97 *Atl. Rep.* 296; 98 *Atl. Rep.* 1085; reversed, *Smith* v. *Haines,* 86 *N. J. Eq.* 224; 98 *Atl. Rep.* 317; the *dicta* in the cases of *In re Allen's Will,* 88 *N. J. Eq.* 291; 102 *Atl. Rep.* 147; *affirmed,* 89 *N. J. Eq.* 208;. 103 *Atl. Rep.* 1051, and *Smock* v. *Smock,* 11 *N. J. Eq.* 156, and 33 *Harvard Law Review* 337. The presumption above stated, presuming testatrix' intention to revoke the first sheet, is therefore rebuttable by proof that her intention proceeded on the misapprehension stated.

However, it has been pointed out by the Court of Errors and Appeals that the doctrine of dependent relative revocation "from its inherent nature is too much exposed to fraud." *Frothingham's Case, supra.* Following the intimations of that case I hold that proof of the concurrence of the plan to make a new will with the intention to revoke, must be strong in order to rebut the presumption of revocation. I use the words "strong proof" to express a standard of proof lying between the standard of a preponderance of proof usual in civil cases and the standard of proof beyond a reasonable doubt. *Wigmore on Evidence* (3d *Ed.*) § 2498; but *Cf. In re Calef's Will,* 109 *N. J. Eq.* 181; 136 *Atl. Rep.* 475; *affirmed,* 111 *N. J. Eq.* 355; 162 *Atl. Rep.* 579.

There may be a bare likelihood that testatrix destroyed the first sheet of her executed will because at the time she thought she was going to rewrite the will. Indeed it is quite possible that the destruction of the first sheet and the changes on the next were all parts of the plan to make a new will. Nor does the fact that she preserved the last three sheets and destroyed the first sheet detract substantially from the force of this possibility; for she was rewriting the will and had not yet put in it a clause appointing an executor, a testimonium clause and an attestation clause, for which if she were to use her old will for a form, she would need the last three sheets but not the first one. However, the proof which gives rise to the possibility that she destroyed the first sheet because at the time she planned to execute a new will, though it has some force, cannot be deemed strong; it does not

dispose of the very substantial possibility that she may have destroyed the first sheet at some time before she had that plan. The presumption of revocation in my view is therefore unrebutted, and the missing sheet must be regarded as revoked. That view of the case eliminates the question whether a court may probate—if I may generalize—three-quarters of a will including the residuary clause (the text of the other quarter being unknown and doubtless affecting the residuary gift) because the testatrix would have preferred that much to none.

Testatrix then revoked the missing sheet. Did she (to proceed to the fourth question) revoke the last three sheets propounded? She made no alterations or marks in the sixth (the residuary) and subsequent paragraphs of her will. But as stated, the first, second and third paragraphs on the missing sheet are destroyed and the fourth and fifth paragraphs are much changed by cancellations and interlineations. It may be argued that she had sufficiently altered the will as to indicate an intention to revoke it all and that she saved the last three sheets, though she thought them revoked, because as stated above she needed them to copy in her new will the clause appointing an executor and testimonium and attestation clauses. On the other hand, it may be that she intended to keep the remnants of this will operative until she executed the new one.

Before considering whether these three sheets are revoked, it should be noticed that the *onus* of proving a revocation is on the party asserting it. *Throckmorton* v. *Holt*, 180 *U. S.* 552, 584; *Hitchings* v. *Wood,* 2 *Moore's P. C.* 355, 447. Indeed it has been said, although I need not go that far, that "where a will has been once regularly made, the presumption of law is strong in its favor and * * * 'The intention to revoke must be plain and without doubt.'" *Johnston* v. *Johnston,* 1 *Phill. Ecc.* 447, 497; *Throckmorton* v. *Holt,* *supra.* No one asserts the revocation here, although some parties object to the probate of only the last three sheets, seeking probate of all six. The proponents of the last three sheets then make out their *prima facie* case unless the preponderance of the evidence bearing on the matter of revocation shows the sheets to be revoked. There are no declarations of the testatrix before the court to disclose her intention for

or against revocation of these three sheets; and the mutilated will itself speaks ambiguously. I certainly cannot say that the evidence preponderates in favor of revocation.

The English cases cited and two others that might be added give no assistance on the question as to whether the last three sheets were revoked. See *Clarke* v. *Scripps,* 2 *Rob. Ecc.* 563 (the will was cut in such a way as to indicate a wish to preserve and not to revoke what remained—probate granted); *In re Goods of Woodward, L. R.* 2, *P. & D.* 206 (*Id.*); *Leonard* v. *Leonard* (1902), *Pac. Rep.* 243 (the last three sheets of the will were unintelligible and unworkable as a will without the first two, which had been destroyed—probate refused). The inadequate opinion in *Treloar* v. *Lean,* 14 *P. D.* 49, leaves that case too speculative to be of authority. *Leonard* v. *Leonard, supra,* commends Theobald's two tests, but the instant case falls between the tests. He says, "* * * the question is whether the portion destroyed is so important as to raise the presumption that the rest cannot have been intended to stand without it or whether it is unimportant and independent of the rest of the will." *Theobald on Wills* (7th Ed.) 50; 34 *Hal. Law,* § 121. Clearly, under the second test, the destroying and changing of clauses prior to a residuary clause cannot be presumed to be independent of the residuary clause. Nor, under the first test, does the preponderance of the evidence here lead to the conclusion that the missing sheet was so important as to raise the presumption that the rest of the will could not have been intended to stand without it.

The last three sheets will therefore be probated. This brings up the final question, namely, whether the interlineations and cancellations as to the legacies in paragraphs 4th and 5th appearing on these sheets are effective. The interlineations may be shortly disposed of; presumptively they were made after execution and must therefore be held of no effect, there being no proof to rebut the presumption. *In re Atkinson,* 93 *N. J. Eq.* 139; 115 *Atl. Rep.* 370.

The cancellations accompanied by interlineations are to be distinguished from those not so accompanied. It is true that all the cancellations must be presumed to have been made by the testatrix *animo revocandi,* for the will was in her custody

during her life and was found with the cancellations on it at her death. *Hillyard* v. *Wood, supra.* However, where, as in the case of the pecuniary legacies, an amount is canceled and another amount is inserted in its place in the hand of the testatrix apparently with the same pen and ink that made the cancellations, the presumption is rebutted; for there is strong proof that the cancellations were induced by a mistake. The mistake—a mistake of law—is that at the time she drew the lines of cancellation she thought the interlined amount would be effective. Analyzed, her intention to revoke is held vitiated because it was predicated on a mistake and not (as has been asserted by counsel supported by language from New Jersey cases) because of the failure of a condition precedent. It is to be supposed that she canceled the amounts of the legacies *because* she thought the interlineations were effective; the cancellations cannot be deemed made *on the condition that* the interlineations were effective. 33 *Harvard Law Review* 337. A cancellation posited on such a condition precedent is so involved a conception as not here to be given credence. The cancellations as to the amounts of these pecuniary legacies have thus no revocative effect.

On the other hand where, as in the case of the cancellations of the legacies as to clothing in the fourth paragraph, there are no interlineations, then the presumption of revocation stands unrebutted; for (as has been decided with regard to the missing first sheet) the evidence is not strong that the making of these cancellations was induced by, and concurrent with, the plan to make a new will. The increase of the residue resulting from these cancellations is in this state effective without the making of a new will or codicil. *Collard* v. *Collard,* 67 *Atl. Rep.* 190; 68 *C. J.* 815.

The decree will admit to probate the last three sheets of the will. The interlined figures "500" will be omitted and the canceled word "Fifteen" restored in paragraph 4th; and in the same paragraph the canceled words "one had been my mother's" and "all clothing to share as they desire" will be omitted. The interlined figures "500" in paragraph fifth will be omitted, and the canceled words "One Thousand" in the same paragraph will be restored.