347 Mich. 153 (1956)
79 N.W.2d 597
In re McKAY ESTATE.
GRANT
v.
EULITT.
Docket No. 21, Calendar No. 46,906.
Supreme Court of Michigan.
Decided December 6, 1956.
Fildew, DeGree, Fleming & Gilbride (Leslie W. Fleming, of counsel), for contestants.
Paul V. Rahaley, for beneficiary Little Sisters of the Poor.
Hayes & McEvoy, for beneficiaries St. Christopher Inn of Graymor, New York and Maryann Hill Fathers of Ann Arbor Trail, Michigan.
BLACK, J.
In the early summer of 1946, during a visit at the home of an old friend, Catherine Taggart, testatrix Helen A. McKay arranged to have Mrs. Taggart obtain for her a form of will such as printers of various types of legal forms prepare and sell. Some weeks later, the date being August 5, 1946, Mrs. McKay appeared at the Taggart home with the form filled out in her own handwriting. The instrument, following publication in the presence of Mrs. Taggart and the latter's daughter as witnesses, was executed and attested as Mrs. McKay's final testament according to statutory formalities. The parties before us *155 are agreed as to the form and the wording of the instrument as it stood that evening following attestation.[*] They agree, too, that the instrument was subsequently rewritten in part, and attemptedly changed, by the hand of Mrs. McKay. The effect of such subsequent alteration gives rise to the controversy before us, there admittedly having been no republication or re-execution.
The instrument was duly submitted for probate following Mrs. McKay's death in 1954. Notice of contest having been filed, the material specification of which is "That said instrument was revoked and cancelled by said deceased," statutory certification to the circuit court was ordered. Trial to the court resulted in a finding and judgment that the instrument should be probated in form as it stood when attested. The contestants, Mary McCusker Eulitt and Edward G. McCusker, styling themselves sole heirs at law of Mrs. McKay, appeal from such judgment. They state, for review, the following questions of moment:
"Where testatrix in her will revoked a bequest by drawing pen and ink lines through it and added notation `all of the other parts of this Will is same outside what is stroked out' is there an absolute revocation or cancellation of that part of the will?
"Where the testatrix in her will revoked a bequest by drawing pen and ink lines through it and failed to dispose of the residue of the estate since added codicils failed for lack of proper attestation, does the residue pass by intestacy?"
The instrument we are considering consists of 2 sheets, each ruled for handwriting on the face side thereof. There is a printed declaration in testamentary form at top of the face side of the first sheet *156 and a printed form of attestation clause at end of the face side of the second sheet. On the face of such first sheet, and in the approximate center of a long paragraph of handwriting, the following appears:
"I request I be buried in my grave beside my husband Gordon D. McKay and that the (Little Sisters of the Poor share in my estate with (St. Christopher Inn of Graymor N. York) and (Maryanhill Fathers of Ann Abor trail a Mission to be used to educdcate Nativities priest."[**]
In margin at lower end of such first sheet the following words appear: "change and added codicl on Jan 14th 1953." On reverse side of this same sheet another long handwritten paragraph appears, the important portions of which read as follows:
"all of the other parts of this will is same outside what is stroked out."
"I leave everything to My Baby Sheila De Nome Smith or Sheila DeNome has she may have her maiden name back. I give her house furnishing clothes stock cash rings and mink coat Everything I own. No matter what it is."[]
The final sheet  the one carrying Mrs. McKay's signature and the properly filled out attestation clause  remains as when signed and attested. The lines drawn through what appear to be intended bequests to the named Catholic charities; the marginal words written at end of the first sheet as quoted, and the entire handwriting appearing on the reverse side of such first sheet, were seclusively drawn and written into the instrument by Mrs. McKay on a *157 date or dates subsequent to August 5, 1946. All this is agreed. It is also agreed that the subsequent attempted dispositions shown on the back of such first sheet are invalid for want of execution and attestation.
As noted above this case was tried to the court. The initial question, therefore, is whether the judgment is supported by evidence. We hold that it is. We hold, too, that the question of Mrs. McKay's presently disputed intention was and is one of fact for the trier of facts.
Trustworthy guidance to rightful disposition of this case will be found in In re Fox's Estate, 192 Mich 699. There the trial judge found on proof before him that an original section of the will in question, setting up a trust for the benefit of the Masonic Order, was obliterated by the testator with legally effective intention of revoking the section. The question being one of fact, and there being proof in support of his finding, the trial judge was upheld. Here the trial judge found on proof before him that Mrs. McKay provisionally obliterated apparent bequests to the charities as portrayed above, and that she did not intend final revocation thereof absent effectiveness of the dispositions attempted by her as shown on the back of the first sheet. Here, too, the trial judge must be upheld. Fox tells us (pp 706, 707 of report):
"In considering the matter in this Court we are dealing with the finding of a court without a jury  a finding of fact to the effect that section 18 was obliterated by the testator with the intention of revoking it. Under our authorities, if there is any evidence to sustain such finding, it cannot be disturbed in this Court."
We are obligated to apply this rule of appellate function, whether the finding brought here declares *158 or rejects effective revocation, if there be evidence to sustain such finding. In this case, like Fox, the task of the trial judge was that of search for the elusive intent of Mrs. McKay as it stood when she completed the attempt or attempts to alter and partially rewrite her will. The rule of dependent relative revocation, and the presumption which sometimes arises from lining out of a bequest or the name of a legatee, are no more than rules of evidence created in aid of ascertainment, whenever possible, of such intent. They are never controlling as a matter of law excepting in unusual circumstances, yet they indubitably assist the trier of facts when fairly brought into play by instrument, evidence, inference and circumstance. In this case the trial judge was authorized to employ, in aid of his findings, the rule of dependent relative revocation as declared in In re Bonkowski's Estate, 266 Mich 112 and in In re Houghten's Estate, 310 Mich 613. Guided thereby he found:
"In the Houghten Case at page 619 the rule is stated by way of quotation from a Georgia case; the quotation concludes: `The matter finally turns upon the intention of the testator, and no mere presumption can be allowed to defeat this intention when it is made to appear.'
"So, in the matter before us we must search for the intention of the deceased in case for any reason the so-called codicils failed. In the very first bequest deceased provided:
"`I give, devise and bequeath Edward G. McCusker of Detroit one dollar for reason known to him and one dollar to Mary Eullitt of Chicago and for same reason. They never bother about me in life. So I remembered them in death.'
"And the intention to disinherit is emphasized by the concluding lines on page one:
"`And should Mary Eulitt of Chicago or Edward G. McCusker be not living at the time of my death *159 their bequest is to pass their heirs their (children only'
"No attempt was made by deceased to change these provisions. They still remain. Under such circumstances can it be said the deceased intended the residue of her estate to become intestate property and thereby fall into the hands of the very brother and sister she disinherited? I think not. The opposite intention must be deduced from the circumstances before us.
"And so her intention implements the presumption against intestacy which is the foundation of the rule of dependent relative revocation invoked by counsel for the charities."
Application as shown of the rule of dependent relative revocation hinges principally on Mrs. McKay's declared and apparently steadfast determination that the appellant heirs should not share in her estate. Had the trial judge ruled otherwise, the result would be that of complete defeat of her known and continued intention with respect to such heirs. This circumstance is sufficient, in and of itself, to sustain the quoted finding that Mrs. McKay's will should be probated in its original form.
Affirmed. Costs to appellees Little Sisters of the Poor, St. Christopher Inn of Graymor, and Maryann Hill Fathers of Ann Arbor Trail.
DETHMERS, C.J., and SHARPE, SMITH, EDWARDS, KELLY, and CARR, JJ., concurred.
BOYLES, J., did not sit.
NOTES
[*] Grammatical as well as legal structure of the instrument is very poor. Its construction, on later occasion for purposes of execution and distribution, will be no easy job.
[**] The spelling in the photostatic copy of the will included in the record would appear to vary slightly from the trial judge's version, above quoted, in 2 respects in that "St. Christopher" would appear to be "St Christper" and "Nativities" would appear to be "Navities."  REPORTER.
[] Sheila Denomme Smith is not related to the testatrix. She was represented by counsel below and has not appealed from the mentioned judgment.